1  Raymond P. Boucher, State Bar No. 115364
    ray@boucher.la
2  Shehnaz M. Bhujwala, State Bar No. 223484
    bhujwala@boucher.la
3  Priscilla Szeto, State Bar No. 305961
    szeto@boucher.la
4  BOUCHER LLP
   21600 Oxnard Street, Suite 600
5  Woodland Hills, California 91367-4903
   Tel:    (818) 340-5400
6  Fax:    (818) 340-5401

7  Esther Berezofsky (Pro Hac Vice)
    eberezofsky@wcblegal.com
8  Sarah Hansel (Pro Hac Vice)
    shansel@wcblegal.com
9  WILLIAMS CUKER BEREZOFSKY, LLC
   210 Lake Drive East, Suite 101
10 Cherry Hill, New Jersey, 08002
   Tel:    (856) 667-0500
11 Fax:    (856) 667-5133

   Stuart R. Chandler, State Bar No. 88969
    stuart@chandlerlaw.com
   CHANDLER LAW
   761 E. Locust Ave, Suite 101
   Fresno, California 93720
   Tel:    (559) 431-7770
   Fax:    (559) 431-7778

12  *[Additional Counsel Listed on Signature Pages]*
    *Attorneys for Plaintiffs*

13

14          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15                **FOR THE COUNTY OF FRESNO**

E-FILED
2/1/2017 4:46:23 PM
FRESNO COUNTY SUPERIOR COURT
By: S. Lopez, Deputy

16 KAREN MICHELI, individually and on behalf
   of all others similarly situated; MICHAEL
17 MICHELI, individually and on behalf of all
   others similarly situated; FAITH NITSCHKE,
18 individually and on behalf of all others
   similarly situated; DAVID NITSCHKE,
19 individually and on behalf of all others
   similarly situated; and JEANETTE GRIDER,
20 individually and on behalf of all others
   similarly situated,

21          Plaintiffs,

22      v.

23 THE CITY OF FRESNO, a Municipal
   Corporation; THE CITY OF FRESNO'S
24 DEPARTMENT OF PUBLIC UTILITIES; a
   Government Entity; VULCAN
25 CONSTRUCTION & MAINTENANCE,
   INC., a California Corporation;
26 MEASUREMENT CONTROL SYSTEMS, a
   California Corporation, and DOES 1 – 100.

27          Defendants.

28

Case No. 16CECG02937

**CLASS ACTION**

**SECOND AMENDED CLASS ACTION COMPLAINT**

1.  **Inverse Condemnation**
2.  **Negligence**
3.  **Nuisance**
4.  **Breach of Contract**
5.  **Unjust Enrichment**
6.  **Breach of Implied Warranty**
7.  **Negligence**

**REQUEST FOR JURY TRIAL**

Plaintiffs KAREN MICHELI, MICHAEL MICHELI, FAITH NITSCHKE, DAVID NITSCHKE, and JEANETTE GRIDER, by and through their undersigned counsel, bring this individual and class action against defendants the CITY OF FRESNO (the "CITY"), VULCAN CONSTRUCTION & MAINTENANCE, INC. and MEASUREMENT CONTROL SYSTEMS, INC. (collectively referred to as "WATER METER INSTALLERS"), and DOES 1-100, inclusive (collectively, "Defendants"), on behalf of themselves and all persons residing within and around the Northeast Fresno, California, area whose homes and plumbing have been damaged from aggressive, corrosive, degraded, and substandard water supplied by the CITY OF FRESNO's Northeast Surface Water Treatment Facility ("NESWTF").

## I.      NATURE OF THE ACTION

1.      For decades, the CITY OF FRESNO has relied exclusively on groundwater from more than 250 deep wells to supply its residents with potable water. With a growing population, ongoing drought conditions, and concerns of over-drafting its groundwater, the CITY saw a need to develop an additional source of water to supply homes in the City Of Fresno. As a result, in 2004 the CITY brought online the Northeast Surface Water Treatment Facility despite knowing that introducing surface water into its water supply would likely cause corrosion and damage to the many homes in Northeast Fresno with galvanized piping.  Since the NESWTF's activation, a large number of residents within and around Northeast Fresno began experiencing issues with their water, including discoloration.

2.      In or about January 2016, the CITY OF FRESNO launched an investigation into water problems based on reports from over three hundred residents of the Northeast area of Fresno, California. Testing conducted on the water in numerous homes, including Plaintiffs', revealed corrosive damage to Plaintiffs' plumbing and the presence of lead, iron, and other toxic contaminants at levels in excess of allowable limits in the drinking water supplied to them by the CITY. An analysis completed by consultants hired by the CITY OF FRESNO confirmed that the probable cause of discoloration in these residents' water and corrosion in their galvanized piping was the CITY's addition of treated surface water into the water distribution system that

///

previously relied solely on groundwater from the wells in and around the City. An example of the corrosive pipes is depicted in the photographs below.

 

3.      This class action is brought on behalf of Northeast Fresno residents who, like Plaintiffs, were supplied municipal water by the CITY through the Northeast Surface Water Treatment Facility. As a result of Defendants' deliberate decision, or wrongful conduct, Plaintiffs—and identifiable Class members—have suffered harm and injuries including but not limited to damaged pipes and plumbing, diminished property values, the cost of remediation and re-plumbing, the cost of contaminated water, and the cost of diagnostic testing related to their ongoing and continuous exposure to lead and other contaminants. Specifically, Plaintiffs' injuries are a result of:

a.      The CITY OF FRESNO, having constructed the NESWTF in furtherance of public objectives to provide additional water to residents of the city, took a calculated risk that damage might occur to some residents' properties with galvanized pipe, including the plumbing of homeowners in Northeast Fresno receiving water from the NESWTF as designed and constructed;

b.      The CITY OF FRESNO's failure to comply with the regulatory scheme, which includes legislatively mandated water testing, notification, and reporting requirements including but not limited to the Environmental Protection Agency's ("EPA") Lead and Copper rule 40 C.F.R. § 141.80, *et seq.*, and California's Lead and Copper rule, 22 CCR 64670, *et seq.* (collectively, "LCR");

///

c. The CITY OF FRESNO's maintenance and operation of its NESWTF relating to the function and purpose of the plant as conceived, including but not limited to the introduction of the surface water to the existing groundwater system without appropriate treatment to address the changing chemistry and its impact to Fresno's water supply, which caused it to deliver highly aggressive and corrosive water; and

d. The CITY OF FRESNO and WATER METER INSTALLERS' negligent installation of pipe connections between Plaintiffs' and Class members' homes and the public water supply, which caused the pipes connecting the CITY's water supply to Plaintiffs and Class members' properties to corrode and leach lead and other toxic metals into their drinking water.

4. Notwithstanding knowledge to the contrary, the CITY has continually denied responsibility for issues relating to the water supply it delivers and claims that the water is not defective or harmful to people or property. The CITY was aware that these issues would likely manifest at the time it undertook to build and develop the NESWTF.

5. A report by HDR Engineering, Inc., drafted in 1998, alerted the CITY that the NESWTF, as deliberately designed and conceived, might cause damage to occur in the homes and plumbing of Northeast Fresno homeowners with galvanized piping. The report warned the CITY that introducing treated surface water into its water distribution system would change the water's chemistry make up, strip Plaintiffs' galvanized piping of its zinc coating, and cause ongoing and continuous damage to their homes.

6. Despite longstanding knowledge of the cause of Plaintiffs' and Class members' water problems, the CITY continued to misrepresent to Plaintiffs and Class members that the problems were harmless and not the result of any action on the part of the CITY.

7. On or about September 16, 2016, Dr. Vernon L. Snoeyink and Water Quality & Treatment Solutions, Inc., consultants hired by the CITY to evaluate the water problems in Fresno, submitted a report to the CITY. The report concluded and confirmed that the likely cause of the discolored water problem is the CITY's introduction of treated surface water into a water system that for decades relied solely upon groundwater. The report further acknowledged that the discoloration issue will not be completely eliminated so long as the Northeast Surface Water

4

Treatment Facility continues supplying water to homes with galvanized piping installed.

## II.   JURISDICTION AND VENUE

8.    This California Superior Court has jurisdiction over this matter pursuant to California Code of Civil Procedure section 410.10. Both the individual and aggregate monetary damages and restitution sought herein exceed the minimal jurisdictional limits of the Superior Court and will be established at trial, according to proofs.

9.    The California Superior Court has personal jurisdiction over Defendants because they are entities and/or persons with sufficient minimum contacts in California, are citizens of California, or have contacts with California so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.

10.    Venue is proper in the Superior Court of California, Fresno County pursuant to Code of Civil Procedure sections 394(a), 395(a), and 395.5. Furthermore, this Court is the proper venue because a substantial amount of Defendants' conduct occurred in this County, and because Plaintiffs reside in and were injured in this County.

## III.   PARTIES

### A.   Plaintiffs

11.    Plaintiffs KAREN MICHELI and MICHAEL MICHELI are citizens of the State of California and residents of the County of Fresno. Plaintiffs KAREN MICHELI and MICHAEL MICHELI purchased and have lived in their Northeast Fresno, California area home since 1995. During the relevant time period, Plaintiffs KAREN MICHELI and MICHAEL MICHELI were unaware of the corrosive nature and growing toxicity of the discolored water supplied to them by the CITY, and regularly drank and used their water for certain, normal household purposes. As a result of Defendants' actions and inactions, as set forth herein, the pipes supplying water from the CITY to their home have corroded and caused lead in excess of permissible levels to leach into the water entering their home. The CITY OF FRESNO'S Department of Public Utilities tested the water in the Micheli home on or about February 2, 2016, February 9, 2016, and again on February 19, 2016. The CITY failed to inform Plaintiffs KAREN MICHELI and MICHAEL MICHELI that the lead levels in their home exceeded the Environmental Protection Agency's (EPA) Action

Level standard (0.015 mg/L) until approximately March 15, 2016, in violation of the Lead and Copper Rules. The CITY, through its misrepresentations and omissions, led Plaintiffs KAREN MICHELI and MICHAEL MICHELI to believe that pipes on their property were the source of their water problems and that the water was safe for all purposes. Plaintiffs have suffered significant harm including, but not limited to the diminution of their property value, other economic harm including the cost of re-plumbing their home, ongoing exposure to excessive levels of lead and other toxic substances, as well as substantial and unreasonable interference with their comfortable enjoyment of life and property.

12.     Plaintiffs KAREN MICHELI and MICHAEL MICHELI have substantially complied with all applicable notice and claim requirements by their presentation of written administrative claims in accordance with the California Tort Claims Act (Cal. Govt. Code § 810 *et seq.*). They submitted their government claims to the City of Fresno and the State of California by U.S. Mail on or about August 22, 2016. On or about September 13, 2016, KAREN and MICHAEL MICHELI submitted their amended claim forms to the City of Fresno. The City of Fresno rejected their claims by letter on or about October 12, 2016.  The California Department of General Services rejected KAREN MICHELI's government claim on September 15, 2016. The time period for the State of California to respond to their government claims has lapsed without response as to MICHAEL MICHELI's government claim. The failure to timely respond is treated as a rejection of the claim.  Cal. Govt. Code § 912.4(a).

13.     Plaintiffs FAITH NITSCHKE and DAVID NITSCHKE are citizens of the State of California and residents of the County of Fresno. Plaintiffs FAITH NITSCHKE and DAVID NITSCHKE purchased their home in the Northeast Fresno, California area in 1992, and are the original homeowners. They have lived in this home continuously since they purchased it. During the relevant time period, Plaintiffs FAITH NITSCHKE and DAVID NITSCHKE were unaware of the corrosive nature and growing toxicity of the water supplied to them by the CITY, and regularly drank and used their water for normal household purposes. As a result of Defendants' actions and inactions, as set forth herein, the pipes supplying water from the CITY to their home have corroded and caused lead in excess of permissible levels to leach into the water entering their

home. The CITY OF FRESNO's Department of Public Utilities tested the water in the Nitschke home on or about January 26, 2016, February 13, 2016, and again on February 19, 2016. The CITY failed to inform Plaintiffs FAITH NITSCHKE and DAVID NITSCHKE that the lead levels in their water exceeded the EPA's Action Level standard until approximately April 6, 2016, in violation of the Lead and Copper Rules. Plaintiffs have suffered significant harm including, but not limited to the diminution of their property's value, other economic harm including the cost of re-plumbing their home, ongoing exposure to excessive levels of lead and other toxic substances, as well as substantial and unreasonable interference with Plaintiffs' comfortable enjoyment of life and property.

14.     Plaintiffs FAITH NITSCHKE and DAVID NITSCHKE have substantially complied with all applicable notice and claim requirements by presentation of their written administrative claims in accordance with the California Tort Claims Act (Cal. Govt. Code § 810 *et seq.*). They submitted their government claims to the City of Fresno and the State of California by U.S. Mail on or about August 29, 2016. On or about September 13, 2016, FAITH and DAVID NITSCHKE submitted their amended claim forms to the City of Fresno. The City of Fresno rejected their claims by letter on or about October 19, 2016.  The time period for the State of California to respond to their government claims has lapsed without response. The failure to timely respond is treated as a rejection of the claim.  Cal. Govt. Code § 912.4(a).

15.     Plaintiff JEANETTE GRIDER is a citizen of the State of California and a resident of the County of Fresno. Plaintiff JEANETTE GRIDER purchased her home together with her husband in the Northeast Fresno, California area in 1992. She and her husband are the original homeowners, and they continue to live in this home. During the relevant time period, Plaintiff JEANETTE GRIDER was unaware of the corrosive nature and growing toxicity of the water supplied to her by the CITY, and regularly drank and used her water for normal household purposes. As a result of Defendants' actions and inactions, as set forth herein, the pipes supplying water from the CITY to her home have corroded and caused lead in excess of permissible levels to leach into the water entering her home. The CITY OF FRESNO'S Department of Public Utilities tested the water in JEANETTE GRIDER's home on or about January 25, 2016 and February 8,

2016. The CITY failed to inform Plaintiff JEANETTE GRIDER that the lead levels in her home exceeded the EPA's Action Level standard until approximately March 15, 2016, when she received the test results, in violation of the Lead and Copper Rules. Plaintiff has suffered significant harm including, but not limited to the diminution of her property value other economic harm, and ongoing exposure to toxic levels of lead and other toxic substances, and substantial and unreasonable interference with Plaintiff's comfortable enjoyment of life and property.

16.     Plaintiff JEANETTE GRIDER has substantially complied with all applicable notice and claim requirements by presentation of her written administrative claims in accordance with the California Tort Claims Act (Cal. Govt. Code § 810 *et seq.*) for herself and the Class. Plaintiff Grider, on behalf of herself and the Class members, submitted their government claims to the City of Fresno and the State of California by U.S. Mail on or about September 7, 2016. The time period for the City of Fresno and State of California to respond to their government claims has lapsed without response.  The failure to timely respond is treated as a rejection of the claim.  Cal. Govt. Code § 912.4(a).

**B.     Defendants**

17.     Defendant CITY OF FRESNO is a municipal corporation, duly organized and existing under the laws of the State of California. The CITY OF FRESNO, by and through the Department of Public Utilities, provides municipal services to its residents such as disposing garbage, collecting recycling, and supplying water. The CITY OF FRESNO'S Department of Public Utilities oversees the Water Division, which manages and operates the CITY OF FRESNO'S public water system. Defendant CITY OF FRESNO'S Department of Public Utilities delivers drinking water to approximately 500,000 urban residential, commercial, and industrial customers within the City of Fresno.

18.     Defendant VULCAN CONSTRUCTION AND MAINTENANCE, INC. is a general engineering contractor with its principal place of business in Fresno, California. The company provides services relating to the installation of water meter systems. On or about May 6, 2010, the Director of the CITY OF FRESNO'S Department of Public Utilities submitted a report to the City Council recommending that the City Council award a contract to VULCAN

1  CONSTRUCTION & MAINTENANCE, INC. to install water meters in the City of Fresno.

2       19.    Defendant MEASUREMENT CONTROL SYSTEMS is a California-based

3  distributor of water meters and offers installation services with its principal place of business in

4  Santa Ana, California. On or about June 3, 2010, the Director of the CITY OF FRESNO'S

5  Department of Public Utilities submitted a report to the City Council recommending that the

6  Council award a contract to MEASUREMENT CONTROL SYSTEMS to install water meters in

7  the CITY OF FRESNO.

8       20.    DEFENDANT DOES: Plaintiffs are unaware at this time of the true names and

9  capacities of the defendants sued herein as DOES 1-100, inclusive, and therefore sue these

10  defendants by such fictitious names. Plaintiffs are informed and believe that each of the fictitious

11  named defendants are legally responsible in some manner for the occurrences herein alleged,

12  assisted in and about the wrongs complained herein by providing financial support, advice,

13  resources, and/or other assistance. Plaintiffs will amend the complaint to allege their true names

14  and capacities when ascertained.

15       21.    Unless otherwise specified, "Defendants" as used herein shall refer collectively to

16  Defendants CITY OF FRESNO, VULCAN CONSTRUCTION & MAINTENANCE, INC.,

17  MEASUREMENT CONTROL SYSTEMS, and DOES 1-100, inclusive.

18       22.    At all relevant times, each of the Defendants, including DOES 1-100, inclusive,

19  was the agent, servant, employee, co-conspirator, alter ego, and/or joint venture of each of the

20  other Defendants. In doing the things herein alleged, each and every Defendant was acting within

21  the course and scope of this agency, employment, conspiracy, alter ego, and/or joint venture, and

22  was acting with the consent, permission and authorization of each of the other Defendants. All

23  actions of each Defendant, as alleged in the causes of action stated herein, were ratified, approved,

24  and/or authorized by every other Defendant with full knowledge of such acts. Defendants are thus

25  jointly and severally liable for such actions.

26       23.    The allegations in this Complaint are based upon information and belief, except for

27  those allegations pertaining to the Plaintiffs named herein and their counsel. Plaintiffs'

28  information and the allegations in this Complaint are based upon information and belief except for

those allegations pertaining to the Plaintiffs named herein and their counsel. Plaintiffs'
information and beliefs are based upon, *inter alia*, the investigation conducted to date by Plaintiffs
and their counsel. Each allegation in this Complaint either has evidentiary support or is likely to
have evidentiary support upon further investigation and discovery.

## IV.    GENERAL ALLEGATIONS

24.    All allegations made herein are pled in the alternative to the extent they present any
actual conflict.

### A.    THE CITY OF FRESNO'S DECISION TO CHANGE THE WATER SOURCE BY INTRODUCING SURFACE WATER CAUSED THE CORROSION OF PIPES USED TO DELIVER WATER TO THE RESIDENTS OF FRESNO.

25.    Historically, the CITY relied exclusively on water from groundwater wells with
relatively high mineral content as its source of water to service these residents. As a result, the
zinc coating of the galvanized piping in residents' homes developed a protective barrier to
corrosion. Groundwater is extremely non-corrosive to galvanized piping.

26.    However, in or around 2004, the CITY constructed a public improvement to
increase its water supply to the City of Fresno and the growing Northeast Fresno community, in
doing so it changed its primary water source by introducing surface water from Kings River and
San Joaquin River, received through the Enterprise Canal, treated at the NESWTF. The NESWTF
supplies more than 20 million gallons of water per day to thousands of homes in the Northeast
area of Fresno, California. As designed and conceived the NESWTF water causes damage to
Plaintiffs' and Class members' homes.

27.    In or about 1998, well before the activation of the NESWTF, the CITY retained a
consultant, HDR Engineering, Inc., to evaluate the consequences of changing the water supply
source from groundwater to combined or blended groundwater and surface water from the
Enterprise Canal. In its 1998 report drafted to the CITY, HDR Engineering, Inc. advised the CITY
that changing its water source would likely cause degradation in the water's aesthetic quality
("colored water") since a new water source with an entirely different chemical composition is
being introduced to pipes that were previously acclimated to the characteristics of a particular

source of water. The 1998 report further warned that potential water quality issues may manifest in the form of increased release of particulates, red water episodes, and the increased corrosion on the base metal of the piping's wall.

28.     The groundwater previously supplied by the CITY to the homes of Fresno, including Plaintiffs' and Class members' homes, was heavily mineralized with a moderate concentration of alkalinity and hardness. Enterprise Canal surface water, as designed, conceived, and maintained on the other hand, has a far lower mineral content, lower overall hardness, and a lower chloride and sulfate content. Whereas the previously supplied groundwater did not cause corrosion or harm to the homes or piping systems in the homes of Northeast Fresno, the blended Enterprise Canal water and groundwater has caused and continues to cause such corrosion and harm.

29.     The 1998 report informed the CITY that there would be a strong likelihood of corrosion in galvanized piping due to the significant differences in these water sources' inorganic character. The CITY knew modifying its water source from heavily mineralized groundwater with moderate concentrations of alkalinity and hardness, a significant contribution of chloride, sulfate, and other inorganic constituents, to combined groundwater and surface water, which contains a significantly different chemical composition, would have adverse effects on the galvanized pipes by destabilizing the material built up in the pipes in most of the Northeast Fresno residents' homes, including the homes of Plaintiffs.

30.     The CITY at the time knew that "galvanized piping predominates with well over 50% of the installation in Fresno households." The CITY knew that providing water from the NESWTF as designed and conceived would cause these homes to be susceptible to discoloration in their water and corrosion in their piping, which would likely lead to the leaching of metals, including toxic metals such as iron and lead, into the water that Fresno residents drink or otherwise ingest and use, and ultimately require replacement of as a result.

31.     The above notwithstanding the CITY constructed the Northeast Fresno Surface Water Treatment Facility which went into operation in 2004, with the inherent risk that surface water used to provide for the growing demand of the public would cause damage and injury to

those homes with galvanized pipes by stripping their protective zinc coating and causing corrosion. After the NESWTF became active and began combining the ground and surface waters, the CITY OF FRESNO's Department of Public Utilities, namely its Water Division, began receiving complaints from a few Fresno residents who had not previously experienced water quality problems.

32.     For several months prior to January 2016, the CITY began receiving increasing complaints relating to its water quality. As a result, it publicly disclosed the issue and undertook an investigation.

33.     In or around September, 2016, a report prepared by hired consultants Dr. Vernon L. Snoeyink and Water Quality & Treatment Solutions, Inc. analyzed the test results and examined extracted pipes from some of the affected homes. The report confirmed that the NESWTF water was causing galvanized piping in the homes to be damaged and to corrode. The report also concluded that the more likely cause of the discolored water is the CITY's introduction of treated NESWTF water into a water system that had served groundwater for decades. The CITY's deliberate decision to continuously switch its water source back and forth between groundwater and surface water only served to intensify the problem.

34.     The September 2016 report proffered a number of recommendations to the CITY OF FRESNO, including informing its residents to let the water run for a period of time to reduce the concentration of lead in their water and replacing the corroded galvanized piping in their homes.

35.     Notwithstanding the CITY's continued representations that its water supply is clean, safe, and reliable, in approximately 2005 or 2006, the CITY nevertheless provided a select and favored number of residents in the CITY with ongoing supplies of bottled water, which continues to this day, for everyday use, including drinking, showering, and cooking. The CITY did not offer safe bottled drinking water to members of the Class, nor did it disclose to Plaintiffs and Class members the fact that it was preferentially providing safe drinking water to a select few resident of Northeast Fresno.

///

36. CITY officials also failed to report the results of tests revealing contaminated and discolored water in its water supply to the State of California or take sufficient system-wide measures to remedy the problem in order to mitigate or prevent further damages to its residents and their properties. Instead, the CITY denied having knowledge of the widespread issue, contending that it had only recently discovered the issue in January, 2016.

37. The CITY ignored irrefutable evidence, before January 2016, that the water supplied to residents of Northeast Fresno was not and is not potable or safe, and exposed and continues to expose these residents, including Plaintiffs and Class members, to toxic metals such as lead, which caused and continues to cause residents to suffer property damage, other economic losses, and the risk of serious health hazards.

38. At all times relevant herein, Defendants, and each of them, concealed and omitted relevant facts that would have allowed Plaintiffs and Class members to discover the true nature and degree of the water contamination issues. As a result of these misrepresentations and omissions, equitable tolling of the statute of limitations applies as to the claims asserted by Plaintiffs and the Class. Any applicable statute of limitations that might otherwise bar certain of the claims at issue should be tolled because Defendants, and each of them, actively misled Plaintiffs and the Class through affirmative representations and omissions with respect to the true nature, quality, and hazards of use of the water as described herein and above.

39. Plaintiffs and Class members exercised due diligence to discover Defendants' wrongdoings. However, such wrongdoing and/or the full extent and degree of such wrongdoing was not reasonably discoverable prior to the date of the filing of this action and/or prior to the statutory period for the filing of this action and since Defendants, and each of them, concealed their wrongdoing through misrepresentations and omissions, Plaintiffs exercised due diligence by promptly filing this Complaint after discovering the facts giving rise to these claims.

///
///
///
///

## V.     CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this class action individually and on behalf of all others similarly situated pursuant to California Code of Civil Procedure section 382. This action may be brought and properly maintained as a class action because Plaintiffs satisfy the numerosity, adequacy, typicality, and commonality pre-requisites for suing as a representative party pursuant to California Code of Civil Procedure section 382.

41.     Plaintiffs seeks to represent a Class defined as follows:

> All individuals and entities in the Northeast Fresno, California area who own or lease real property receiving water from the City of Fresno's Northeast Surface Water Treatment Facility who have been harmed in their person or property, including:

> > All persons and entities in Northeast Fresno, California area who have sustained harm by Defendants' decision to activate, operate, and maintain the Northeast Fresno Water Treatment Facility as deliberately planned, constructed, and maintained;

> > All persons and entities in the Northeast Fresno, California area who have sustained harm by Defendants' violation of federal and state Lead and Copper Rule requirements to operate and maintain appropriate and optimal corrosion control treatment (40 C.F.R. § 141.80 *et seq.* and 22 CCR 64670 *et seq.*);

> > All persons and entities in the Northeast Fresno, California who have sustained harmed by the CITY's violation of the federal Lead and Copper Rule's requirement to notify customers of their individual test results of tap water samples tested for lead within thirty days after receiving the results. 40 C.F.R. § 141.85(d)(2);

> > All persons and entities in the Northeast Fresno, California area whose water was tested for lead and had lead in their water at levels in excess of the EPA's Action Level standard; and

> > All persons and entities in the Northeast Fresno, California area who own or lease real property fitted with galvanized pipes and receive water from the City of Fresno at any time during the relevant statutory period.

42.     At all relevant times, Plaintiffs named herein were and are within the proposed Class as described above.

43.     Excluded from the proposed Class are Defendants; the officers, directors and

employees of Defendants; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, and/or heir or assign of Defendants; also excluded is any judicial officer presiding over this action. Plaintiffs reserve the right to modify the proposed class definition and to add or modify subclasses.

44. <u>Numerosity.</u> The proposed Class is so numerous that joinder of all members is unfeasible and impractical. The CITY maintains that its Northeast Surface Water Treatment Facility supplies more than 20 million gallons of water per day to thousands of homes in the Northeast Fresno area, and more than 1,500 residents have complained to the CITY about issues relating to their water. In addition, the City has reported that over 300 homes tested reveal levels of lead and nearly 120 of them have lead levels in excess of acceptable thresholds. The proposed Class is sufficiently numerous, making individual joinder of Class members' claims impracticable.

45. <u>Ascertainability.</u> Class members are ascertainable through the CITY and State of California's public records. Moreover, the CITY has conducted water testing throughout Fresno, and has sent monthly reports with such information to the State of California. This action is properly suited for class action treatment because a well-defined community of interest in the litigation exists and the proposed class is readily and easily ascertainable.

46. <u>Typicality.</u> Plaintiffs' claims are typical of the claims of all members of each Class Plaintiffs seek to represent because all members of the Class sustained injuries arising out of Defendants' common course of conduct in violation of law and the injuries of all members of the Class were caused by Defendants' wrongful conduct in violation of law, as alleged herein. Plaintiffs', like all Class members, have been harmed by Defendants' misconduct and failure to act, and Plaintiffs have suffered harm and incurred damages and losses related to the aggressive, corrosive, degraded, and substandard water supplied by Fresno's public water system, which caused the corrosion of pipes and Plaintiffs to be exposed to an excess levels of lead, iron, and other hazardous substances. Furthermore, the CITY's failure to test, report, and investigate its issues with its water supply and notify and warn the public of the same is the basis of these Defendants' misconduct. This action and/or failure to act represents a common course of misconduct that caused harm to Plaintiffs and Class members.

47. <u>Adequacy.</u> Plaintiffs are adequate representatives of the class they seek to represent and will fairly protect the interests of Class members. Plaintiffs' interests do not conflict with Class members' interests. Plaintiffs have no interest antagonistic to those of Class members, and Defendants have no defenses unique to Plaintiffs. Plaintiffs have retained counsel competent and experienced in complex class action litigations, and Plaintiffs intend to vigorously pursue favorable resolution of this suit on behalf of themselves and the members of the Class.

48. <u>Predominant Common Questions of Law and/or Fact.</u> This is a well-defined community of interest and common questions of law and fact exist as to all members of the proposed Class and predominate over questions affecting only individual Class members; these common questions will drive the resolution of this litigation. Common questions applicable to all classes include:

    a.     Whether Defendants engaged in the conduct alleged herein;

    b.     Whether the CITY OF FRESNO undertook a public improvement by developing and bringing online the NESWTF;

    c.     Whether the NESWTF as deliberately designed and conceived damaged Plaintiffs' and Class members' homes;

    d.     Whether the CITY OF FRESNO was acting in furtherance of its public objectives to provide additional water to its residents by developing, building, and maintaining the NESWTF;

    e.     Whether the CITY OF FRESNO was taking a calculated risk that damage to Plaintiffs' and Class members' plumbing and homes may occur;

    f.     Whether the CITY OF FRESNO owed a duty to Plaintiffs and Class members by operating and maintaining the NESWTF that provides over 20 million gallons of water per day to over thousands of residents in Fresno;

    g.     Whether the CITY OF FRESNO acted reasonably in the operation and maintenance of the NESWTF;

    h.     Whether the CITY OF FRESNO was negligent in its operation and maintenance of its public water system;

1    i.    Whether the CITY OF FRESNO complied with the mandatory duty to test

2  the municipal water supply in conformance with requirements under the state and federal Safe

3  Drinking Water Act, 42 U.S.C. § 300f, *et seq.*, Cal. Health & Saf. Code § 116270, *et seq.*, and the

4  federal and state Lead and Copper Rule, 40 C.F.R. § 141.80, *et seq.*; 22 C.C.R. 64670, *et seq.*;

5    j.    Whether the CITY OF FRESNO breached a duty to Plaintiffs and Class

6  members to notify them of the lead contamination in their water supply;

7    k.    Whether the CITY OF FRESNO was negligent in not reporting the

8  complaints or taking corrective action upon discovery of these water issues;

9    l.    Whether the CITY OF FRESNO made unlawful, misleading, and false

10  representations or material omissions with respect to the drinkability and safety of Fresno's public

11  water system;

12    m.    Whether Defendants' actions and inactions were a substantial factor in

13  causing harm to Plaintiffs and Class members;

14    n.    Whether Defendants' misconduct constitutes interference with Plaintiffs'

15  and Class members' enjoyment of their lives and properties;

16    o.    Whether Defendants have caused a nuisance;

17    p.    Whether Defendants have violated any California statutes;

18    q.    Whether the CITY OF FRESNO's actions or inactions breached its

19  contracts with Plaintiffs and Class members for water services;

20    r.    Whether the CITY OF FRESNO was unjustly enriched by their actions or

21  inactions alleged herein;

22    s.    Whether the CITY OF FRESNO breached implied warranties to Plaintiffs

23  and Class members by their actions or inactions alleged herein;

24    t.    Whether the CITY OF FRESNO, WATER METER INSTALLERS, and

25  DOE Defendants were negligent in their installation of the water meters in residents' homes;

26    u.    Whether the Defendants breached their duties to Plaintiffs and Class

27  members regarding the installation of water meters;

28  *///*

v.   Whether Defendants' breaches of duty to Plaintiffs and Class members was the actual and proximate cause of Plaintiffs' and Class members' injuries;

w.   Whether it was reasonably foreseeable that Defendants' failure to properly test, investigate, report, and install water meters would result in harm including property damages and economic damages;

x.   Whether Defendants' misconduct, actions, and/or inactions have caused a diminution of Plaintiffs' property values and other injuries; and

y.   Whether Plaintiffs are entitled to injunctive relief against the CITY OF FRESNO.

49.   Superiority. A class action is superior to any other available method for the fair and efficient adjudication of the claims of Class members because Defendants have acted or refused to act on grounds generally applicable to all Class members, thereby making appropriate final injunctive relief on a class-wide basis. In addition, Plaintiffs and Class members will not be able to obtain effective and economical legal redress unless the action is maintained as a class action. Finally, without class certification, the prosecution of separate actions by individual Class members would create the risk of:

a.   Inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants;

b.   Adjudications with respect to the individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests;

c.   Defendants necessarily gaining an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each individual member of the Class with Defendants' vastly superior financial and legal resources; and

d.   Unnecessary delay and expense to all parties and to the court system.

50.   Plaintiffs do not anticipate any difficulty in the management of this litigation.

///

///

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### INVERSE CONDEMNATION

### (Against the CITY OF FRESNO and DOES 1-100, Inclusive)

51.    Plaintiffs re-allege and incorporate herein by reference all of the allegations contained in paragraphs 1-2, 3a, 3c, 4-35, and 38-50, inclusive, as though fully set forth herein.

52.    Article I, Section 19 of the California Constitution provides that "[p]rivate property may be . . . damaged for a public use and only when just compensation . . . has first been paid to, or into court for, the owner." The fundamental policy underlying inverse condemnation is that the costs of a public improvement benefiting the community should be spread among those benefited rather than allocated to a single member of the community.

53.    The CITY OF FRESNO (the "CITY") and Does 1 through 100 planned, constructed, operated, maintained, and/or oversaw the Northeast Fresno Surface Water Treatment Facility ("NESWTF") for public use and benefit: to supply its residents with more water. The NESWTF supplements the CITY's drinking water with treated surface water received through the Enterprise Canal. In the peak summer months, the NEWSTF supplies about 15% of the City's potable water. In the winter months when demand is lower, it supplies approximately 30% of the system demand.

54.    The CITY's introduction of treated surface water into Fresno's water supply as deliberately designed and conceived by the CITY caused physical damage to Plaintiffs' and Class members' properties.

55.    The CITY had prior knowledge, based on the 1998 report HDR Engineering, Inc. prepared for it, that galvanized piping predominates with well over 50% of the installation in Northeast Fresno households. The CITY also knew that properties with such piping would be susceptible to discoloration in their water and corrosion in their piping if supplied with water from the NESWTF. The City also knew this would likely lead to the leaching of metals, including metals such as iron and lead, into the water that Northeast Fresno residents drink or otherwise ingest or use.

19

56. Despite the CITY's knowledge that homes with galvanized piping would be susceptible to accelerated corrosion due to the chemistry change of switching water sources, the CITY nevertheless made a deliberate policy decision to shift the risk of future loss to private property owners, including Plaintiffs and Class members; and these inherent risks forewarned by the 1998 report did in fact materialize. As a result of the CITY's decision to activate, operate, and maintain the NEWSTF as deliberately planned, constructed, and maintained, Plaintiffs and Class members have suffered legal injuries and damages, including but not limited to physical damage to their properties, the loss of and diminution of value of their properties, the loss of use and enjoyment of their property, ongoing and continued dissolution of the zinc coating in their galvanized piping, and the cost to repair the damages.

57. Dr. Vernon Snoeyink, an expert hired by the CITY OF FRESNO, identified in his September 16, 2016 evaluation report to the CITY that the probable cause of the discoloration in residents' water is the CITY's introduction of the NESWTF treated surface water into a water system that for decades served solely groundwater. The report further concluded that the CITY's change in water sources caused a disturbance in the chemical balance between the water and the piping surfaces. This disturbance only intensified with the CITY's deliberate act of continuously switching the two chemically different water sources back and forth based on consumer demand, which prevented the surface piping from being able to establish a balance with either water sources.

58. The CITY OF FRESNO and Does 1-100 are liable to Plaintiffs and Class members all damages arising from their actions and/or inactions, including compensatory and injunctive relief and attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5.

///

///

///

///

///

///

**SECOND CAUSE OF ACTION**

**NEGLIGENCE**

**(Against the CITY OF FRESNO AND DOES 1-100, Inclusive)**

59.     Plaintiffs re-allege and incorporate herein by reference all of the allegations contained in paragraphs 1-2, 3b, 3c, 3d, and 4-50, as though fully set forth herein.

60.     THE CITY OF FRESNO (the "CITY") and Does 1 through 100, inclusive owe a mandatory duty to Plaintiffs and Class members to comply with the United States Safe Drinking Water Act, 42 U.S.C. § 300f, *et seq.*, the California Safe Drinking Water Act, Cal. Health & Saf. Code § 116270, *et seq.*, Cal. Health & Saf. Code § 64664, and the federal and state Lead and Copper Rules, 40 C.F.R. § 141.80 *et seq.*, and 22 CCR 64670, *et seq.*

61.     The United States Safe Drinking Water Act, 42 U.S.C. § 300f, *et seq.*, the California Safe Drinking Water Act, Cal. Health & Saf. Code § 116270, *et seq.*, Cal. Health & Saf. Code § 64664, and the federal and state Lead and Copper Rules, 40 C.F.R. § 141.80 *et seq.*, and 22 CCR 64670, *et seq.* are designed to protect against the harms suffered by Plaintiffs and Class members, namely the provision of public water that is not pure, wholesome, potable or safe for public consumption.

62.     The CITY violated mandatory duties imposed and required pursuant to the United States Safe Drinking Water Act, 42 U.S.C. § 300f, *et seq.*, the California Safe Drinking Water Act, Cal. Health & Saf. Code § 116270, *et seq.*, Cal. Health & Saf. Code § 64664, and supporting federal and state regulations.

63.     The Environmental Protection Agency ("EPA") is responsible for establishing regulations pursuant to the United States Safe Drinking Water Act, 42 USC. § 300f, *et seq.* Enforcement and implementation of those rules is delegated to state and local environmental agencies and municipalities.

64.     The California State Legislature enacted the California Safe Drinking Water Act, Cal. Heath & Saf. Code § 116270, *et seq.*, to improve upon the minimum requirements of the federal Safe Drinking Water Act, and to establish primary drinking water standards that are at least as stringent as those established under the federal Safe Drinking Water Act.

21

65. The federal and state Lead and Copper Rules ("LCRs"), 40 C.F.R. § 141.80 *et seq.*, and 22 C.C.R. § 64670, *et seq.* were enacted to establish protocols to ensure the public water systems do not allow unsafe levels of lead and copper to contaminate municipal water supplies.

66. The LCRs require the CITY's water utilities to test its water supply from the taps of consumers.

67. In order to comply with the LCRs, California enacted detailed laws and regulations governing the testing of its water supply. The manner and method of water supply testing is not discretionary pursuant to California Government Code section 815.6, which states:

> *Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.*

68. The CITY OF FRESNO failed to discharge its mandatory duty to conduct water supply testing.

69. The LCRS and California law require that the CITY report the results of all tap samples, including those samples that exceed the federal action level of more than 15 parts per billion ("ppb") of lead, to the State. These state and federal reporting requirements are not discretionary.

70. The CITY OF FRESNO failed to discharge its mandatory duty to report the results of lead levels in excess of 15 ppb.

71. The California Safe Drinking Water Act, Cal. Health & Saf. Code § 116450, requires the CITY to file a report with the State when any primacy drinking water standard—including in those set forth in the LCRs—is not complied with, or when a monitoring requirement is not performed. This state reporting requirement is not discretionary.

72. The CITY failed to discharge its mandatory duty to report its water supply's noncompliance with drinking water standards.

73. The CITY failed to discharge its mandatory duty to report that a monitoring requirement, namely proper lead and copper testing pursuant to the LCRs was not performed.

74.     The California Safe Drinking Water Act, Cal. Health & Saf. Code § 116450, requires the CITY to notify the public when any primacy drinking water standard—including the standards set forth in the LCRs—is not complied with, or when a monitoring requirement is not performed. This public notification requirement is not discretionary.

75.     The CITY failed to discharge its mandatory duty to notify the public that a monitoring requirement, namely proper lead and copper testing, was not performed.

76.     The California Health & Safety Code § 64664 requires the CITY to report all citizen water quality complaints to the State of California on a monthly basis. This reporting requirement is not discretionary.

77.     The CITY failed to discharge its mandatory duty to report all citizen water quality complaints to the State of California on a monthly basis.

78.     The laws and regulations enacted pursuant to the United States Safe Drinking Water Act, 42 U.S.C. § 300f, *et seq.* are intended to protect against the kind of injury suffered by Plaintiffs and Class members, namely the contamination of public drinking water with unsafe levels of toxic substances including but not limited to lead.

79.     The Defendants' breach of the mandatory duties described above was a substantial factor in causing injuries to Plaintiffs and the Class.

80.     The CITY's decision to introduce surface water treated by the NESWTF into the water supply without taking known and necessary measures to protect the piping systems in Plaintiffs' and Class members' homes caused discolored water, accelerated corrosion in pipes delivering water, and eventually the contamination of the water with excessive levels and lead, iron, and other hazardous substances.

81.     The CITY disregarded, for over a period of years, numerous citizen complaints regarding the Fresno water supply. The CITY negligently failed to investigate and/or remedy the problem and failed to follow legislatively mandated water testing, monitoring, and reporting requirements. CITY officials also failed to report the results of tests revealing contaminated and discolored water in the water supply to the State of California or take sufficient system-wide measures to remedy the problem in order to mitigate or prevent further damages to its residents

and their properties, all of which has only served to prolong, intensify, and aggravate the degrading of Plaintiffs' galvanized piping and the exposure of Plaintiffs' and Class members' persons and properties to unsafe levels of lead, iron, and other hazardous substances in their drinking water. The harm Plaintiffs and Class members suffered, and continue to suffer, is a direct result of Defendants' actions and inactions.

82. The CITY has instead simply denied having knowledge of this widespread issue, contending that it only recently discovered the issue in January, 2016.

83. Plaintiffs and Class members relied on the CITY to perform its duties and to ensure that unsafe levels of lead, iron, copper, and/or other toxins did not contaminate its water supplies.

84. The CITY breached its duties to Plaintiffs and members of the putative class in ways including, but not limited to, the following:

        a.     Failing to require proper corrosion control treatment of City of Fresno water;

        b.     Failing to implement proper corrosion control treatment of City of Fresno water;

        c.     Failing to require proper testing of Fresno's water;

        a.     Failing to conduct proper testing of Fresno's water;

        d.     Failing to respond to evidence that water supplied from NESWTF was not safe for public consumption when supplied to homes with galvanized steel pipes;

        e.     Failing to conduct a reasonable investigation after receiving evidence that drinking water was not safe for public consumption;

        f.     Failing to promptly report evidence of lead and other hazardous substances in the water supply to the State of California, Plaintiffs, and members of the putative class;

        g.     Failing to promptly notify Plaintiffs and members of the putative class to the presence of lead in their water;

        h.     Withholding and concealing information showing that the water was unsafe to drink;

///

i. Failing to warn Plaintiffs and the public that the water supplied from the NESWTF to Plaintiffs' properties, particularly properties with galvanized steel pipes, was not safe to drink;

j. Publically declaring contaminated unsafe water to be safe, clean, and reliable to drink; and

k. Failing to take steps to mitigate the impact of the corrosive nature of the Northeast Fresno Water Treatment Facility on Plaintiffs' and Class members' pipes.

85. Plaintiffs' and Class members' properties suffered foreseeable harm as a result of the CITY's breach of its mandatory duties and as a result of their negligent implementation and operation of the NESWTF.

86. The CITY OF FRESNO knew, or should have known that its failure to abide by their duties to test, report, investigate, and remediate problems with the water supply, and notify the public of same, could result in corrosion of pipes and excessive levels of lead, iron, and other hazardous substances to leach into residents' water. The CITY knew or should have known that the failures of the foregoing could, and would cause physical damage to Plaintiffs' and Class members' properties.

87. As a result of Defendants' breach of its mandatory duty to test, report and investigate problems with the water supply and notify the public of same, Plaintiffs' and Class members' properties were, and are, being physically invaded by corrosive water supplied by the CITY OF FRESNO.

88. As a result of the CITY's breach of its mandatory duties, Plaintiffs and Class members suffered property damages as alleged herein, including physical injury to their property, as corroborated by testing of their water revealing the presence of lead in excess of allowable levels.

89. As a result of the CITY's breach of its mandatory duties, Plaintiffs and Class members suffered and will continue to suffer the loss of the quiet use and enjoyment of their properties.

///

90.     As a result of the CITY's breach of its mandatory duties, Plaintiffs and Class members have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, property damage, diminution of value of real estate, the cost to repair the damage, plus the value of their lost use of the property as a result of the CITY's negligence.

91.     Pursuant to California Government Code section 815.6, the CITY is liable to Plaintiffs and Class members for all damages arising from the breach of their mandatory duties, including compensatory and injunctive relief, and attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5.

### THIRD CAUSE OF ACTION

### PRIVATE NUISANCE

### (Against All DEFENDANTS)

92.     Plaintiffs re-allege and incorporate herein by reference all of the allegations contained in paragraphs 1-50, 52-58, 60-91, and 123-136, inclusive, as though fully set forth herein.

93.     Plaintiffs and Class members own or lease property in Fresno, California.

94.     The CITY OF FRESNO owes a mandatory duty to Plaintiffs and Class members to comply with the United States Safe Drinking Water Act, 42 U.S.C. § 300f, *et seq.*, the California Safe Drinking Water Act, Cal. Health & Saf. Code § 116270, *et seq.*, Cal. Health & Saf. Code § 64664, and the federal and state Lead and Copper Rules, 40 C.F.R. § 141.80 *et seq.*, and 22 CCR 64670, *et seq.*

95.     The United States Safe Drinking Water Act, 42 U.S.C. § 300f, *et seq.*, the California Safe Drinking Water Act, Cal. Health & Saf. Code § 116270, *et seq.*, Cal. Health & Saf. Code § 64664, and the federal and state Lead and Copper Rules, 40 C.F.R. § 141.80 *et seq.*, and 22 CCR 64670, *et seq.* are designed to protect against the harms suffered by Plaintiffs and Class members, namely the provision of public water that is not pure, wholesome, potable or safe for public consumption.

96.     DEFENDANTS' actions, and the CITY OF FRESNO's breach of the duties

described above, created a nuisance and substantially and unreasonably interfered with Plaintiffs' and Class members' comfortable enjoyment of life and property, by causing known, corrosive NESWTF water to be delivered to Plaintiffs' and Class members' homes, resulting in foul, discolored, and lead-contaminated water, which harmed their properties and persons.

97. Neither Plaintiffs nor Class members consented to the invasion of corrosive water that would cause the piping in their home to degrade, resulting in foul, discolored, and lead-contaminated water in their persons or properties.

98. The contamination of Class members' drinking water has interfered with the rights of Plaintiffs and Class members to use and enjoy their property. Indeed, this interference is substantial in nature. It has caused and is causing Plaintiffs and Class members to, inter alia, refrain from using water to drink, cook, or bathe, which has, in turn, caused significant inconvenience and expense. DEFENDANTS' conduct has also substantially interfered with Plaintiffs' and Class members' ability to enjoy their property, to avail themselves of their property's value as an asset and/or source of collateral for financing, and to use their property in the manner that each Plaintiff or Class member so chooses.

99. DEFENDANTS' negligent, reckless and/or intentional acts and omissions, and the CITY OF FRESNO's breach of their duties, were unreasonable and constitute a continuous invasion of the property rights of Plaintiffs and Class members.

100. As a result of DEFENDANTS' acts and/or failures to act, and the CITY OF FRESNO's breach of their mandatory duties, Plaintiffs and the putative class have incurred, and will continue to incur, costs and expenses related to the investigation, treatment, remediation and monitoring of drinking water and the contamination of their respective properties.

**FOURTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against the CITY OF FRESNO AND DOES 1-100, Inclusive)**

101. Plaintiffs re-allege and incorporate herein by reference all of the allegations contained in paragraphs 1 to 50, 52-58, and 60-91, inclusive, as though fully set forth herein.

102. At all times herein, the CITY OF FRESNO (the "CITY"), pursuant to Chapter 6, Article 1 of the Municipal code of the City of Fresno, offered services to provide for payment potable, clean, safe, and reliable water that meets all federal and state drinking water standards to their residents.

103. Plaintiffs accepted the offer by applying to the CITY for water service, utilizing the CITY's water, agreeing to pay for the water, and tendering payment for the water.

104. To receive water services, Plaintiffs and Class members were required to, and did, apply for an account, either through the written application process on the CITY's website or through telephone. The application contains terms including the location of the premises to be served, the person(s) authorized on the water service account, and the date water service is to commence. The CITY also has conditions precedent to final acceptance of Plaintiffs' and Class members' water service applications, as listed in Chapter 6, Article 1 of the CITY's municipal code. Plaintiffs and Class members were provided with a monthly bill detailing the amount owed to the CITY, to which they paid and the CITY collected. Plaintiffs and Class members may also discontinue their water service upon request, to which the CITY will complete within forty-eight hours of the request.

105. Thus, Plaintiffs, Class members, and the CITY OF FRESNO entered into a contract for the purchase and sale of potable, clean, safe, and reliable, non-corrosive, and non-harmful water that meets all federal and state drinking water standards.

106. The CITY has admitted that the water provided to Plaintiffs and Class members was substandard and degraded, and therefore not fit for its intended uses in Plaintiffs' and Class members' homes.

107. The CITY materially and irreparably breached the contract with Plaintiffs and Class members by failing to provide non-corrosive, non-harmful, potable, clean, and safe water, and instead provided substandard and degraded water unfit for use in Plaintiffs and Class members' homes.

108. As a result of the CITY's breach, Plaintiffs and Class members suffered damages in the amount of all debts and obligations for Fresno water, whether tendered or untendered, and as

1  stated throughout this complaint.

2      109.    The CITY is liable to Plaintiffs and the putative class for all amounts billed and/or

3  collected, whether paid or unpaid, for corrosive water that was supplied to Plaintiffs and Class

4  members.

5  **FIFTH CAUSE OF ACTION**

6  **UNJUST ENRICHMENT**

7  **(Against the CITY OF FRESNO AND DOES 1-100, Inclusive)**

8
9      110.    Plaintiffs re-allege and incorporate herein by reference all of the allegations

10 contained in paragraphs 1 to 50, 52-58, and 60-91, inclusive, as though fully set forth herein.

11     111.    The CITY OF FRESNO (the "CITY") has received the benefits of the funds paid

12 by Plaintiffs and Class members for substandard and degraded water that was, and is, unfit for use

13 in Plaintiffs' homes.

14     112.    The CITY has utilized these funds for the operation of the government(s) of

15 Fresno, California.

16     113.    The retention of the benefit of the funds paid by Plaintiffs and Class members

17 constitutes unjust enrichment in the amount of all funds paid for water that was unfit for human

18 consumption.

19     114.    It would be unjust to allow the CITY to retain the benefit they obtained from

20 Plaintiffs.

21     115.    Plaintiffs seek restitution and restitutionary disgorgement of the CITY's funds.

22 **SIXTH CAUSE OF ACTION**

23 **BREACH OF IMPLIED WARRANTY**

24 **(Against the CITY OF FRESNO AND DOES 1-100, Inclusive)**

25     116.    Plaintiffs re-allege and incorporate herein by reference all of the allegations

26 contained in paragraphs 1 to 50, 52-58, and 60-91, inclusive, as though fully set forth herein.

27     117.    The CITY OF FRESNO (the "CITY") directly promised to provide to Plaintiffs

28 and Class members water that was potable, clean, safe, reliable, and fit for use in their homes

29

and/or impliedly promised that the water provided to Plaintiffs and Class members was non-corrosive and non-harmful when supplied to their homes.

118. The CITY has admitted that the water provided to Plaintiffs and Class members was substandard and degraded and therefore clearly not fit for its intended uses.

119. The provision of water unfit for its intended purpose and/or the admission that the water was not fit for its intended purpose constitute material breaches of an implied warranty and/or contract.

120. As a result of the CITY breach, Plaintiffs and Class members suffered damages in the amount of all debts and obligations for Fresno water, whether tendered or untendered, and as stated throughout this complaint.

121. The CITY is liable to Plaintiffs and the putative class for all amounts billed and/or collected, whether paid or unpaid, for water that was unfit for human consumption.

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE

### (Against WATER METER INSTALLERS AND DOES 1-100, Inclusive)

122. Plaintiffs re-allege and incorporate herein by reference all of the allegations contained in the paragraphs 1-50, inclusive, as though fully set forth herein.

123. In 2003, California passed legislation requiring all water suppliers in the federal Central Valley Project under a water service contract or subcontract with the U.S. Bureau of Reclamation, including Fresno, to have water meters installed by January 2013 and bill by a volumetric rate. As a result, the CITY undertook a "multi-year installation project" in or about 2008 to install water meters and connect residential pipes to them, finishing this project in or about the last month of 2012. The CITY retained private contractors, including VULCAN CONSTRUCTION & MAINTENANCE, INC. and MEASUREMENT CONTROL SYSTEM ("WATER METER INSTALLERS") to undertake the installation of water meters in order to bring Fresno into compliance. The WATER METER INSTALLERS, retained by the City, negligently installed these water meters, by, among other things, failing to install industry-

standard dielectric connections between the brass meters and the galvanized piping.

124.    As a result of the Defendants' failure to adhere to industry standards for the installation and connection of water meters, and specifically by joining dissimilar metals without taking the appropriate measures to prevent and protect against accelerated corrosion, the pipes supplying residents' water, including Plaintiffs' water from the CITY corroded at an accelerated rate, thereby exposing residents, including Plaintiffs, to toxic levels of lead and other hazardous substances.

125.    Indeed, it was not until approximately July, 2016 that news reporters investigating the CITY's water issues reported that the Defendants' installation of water meters in or about 2012 may have caused corrosion as a result of Defendants having attached dissimilar metals. In or about the same time, the CITY mailed out notices to certain residents describing the negligent installation of water meters as follows: "In these locations where copper, brass and similar metals are connected to galvanized pipe- or the dielectric union has failed- corrosion of the galvanized piping will occur- regardless of the water supply or corrosion control strategy- and lead will be found present during sampling."

126.    WATER METER INSTALLERS and DOES 1 – 100 ("WATER METER INSTALLERS") undertook to perform a duty owed to Plaintiffs and Class members by the City of Fresno and/or the State of California.

127.    Based on this undertaking, WATER METER INSTALLERS have a duty to Plaintiffs and the putative class to exercise reasonable care in the performance of their services.

128.    WATER METER INSTALLERS have a duty to adhere to industry standards in performing services.

129.    WATER METER INSTALLERS failed to exercise reasonable care or adhere to industry standards in the installation of water meters in the City of Fresno.

130.    WATER METER INSTALLERS failed to exercise reasonable care or adhere to industry standards by failing to install industry-standard dielectric connections between the brass meters and the galvanized piping.

131.    WATER METER INSTALLERS failed to exercise reasonable care or adhere to

31

industry standards by joining dissimilar metals without taking the appropriate measures to prevent and protect against accelerated corrosion.

132. As set forth above, the installation by WATER METER INSTALLERS of connections between Plaintiffs' and Class members' homes and the public water supply caused the pipes connecting the CITY's water supply to Plaintiff and Class members' properties to corrode and leach lead and other toxic metals into their drinking water.

133. WATER METER INSTALLERS knew or should have known that the negligent installation of water meters could result in corroded piping and ultimately cause Plaintiffs and Class members to be exposed to contaminated water.

134. As a result of WATER METER INSTALLERS' negligent conduct, including those acts described above, Plaintiffs and Class members suffered harm to their properties.

135. WATER METER INSTALLERS' negligent conduct was a substantial factor in causing Plaintiffs' and Class members' harm.

136. WATER METER INSTALLERS are liable to Plaintiffs and Class members for all damages arising from their negligence, including compensatory relief, and attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5.

///
///
///
///
///
///
///
///
///
///
///
///

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants, and each of them, as follows:

1.    For an order certifying the Class and appointing Plaintiffs as representatives of the Class and appointing the undersigned as Class Counsel;

2.    For an award of actual damages as against the CITY OF FRESNO, VULCAN CONSTRUCTION & MAINTENANCE, INC and MEASUREMENT CONTROL SYSTEMS;

3.    For an award of restitution and restitutionary disgorgement as against the CITY OF FRESNO;

4.    For an award of attorneys' fees and costs under Code of Civil Procedure section 102.5 and all other applicable laws;

5.    For an injunction prohibiting the CITY OF FRESNO from continuing the wrongful conduct alleged herein;

7.    For pre-judgment and post-judgment interest to the extent allowed by law; and

8.    For such other and further relief as the Court deems just and proper.

DATED:  February 1, 2016                    Respectfully Submitted,

                                            BOUCHER LLP


                                            By: _____
                                            RAYMOND P. BOUCHER
                                            SHEHNAZ M. BHUJWALA
                                            PRISCILLA SZETO
                                            *[Additional Counsel Listed on Next Page]*

WILLIAMS CUKER BEREZOFSKY LLC

ESTHER BEREZOFSKY
SARAH HANSEL

CHANDLER LAW

STUART R. CHANDLER

OWEN, PATTERSON & OWEN, LLP

GREGORY OWEN, State Bar No. 102845
  greg@owenpatterson.com
OWEN, PATTERSON & OWEN, LLP
23822 W. Valencia Blvd., Suite 303
Valencia, California, 91355
Tel:     (661) 799-3899; Fax:  (661) 799-2774

**REQUEST FOR JURY TRIAL**

Plaintiffs, individually and on behalf of a Class of other similarly situated, hereby respectfully request a trial by jury of all causes of action and issues so triable.

DATED:  February 1, 2016                    Respectfully Submitted,

                                                 BOUCHER LLP

                                                 By: _____

                                                     RAYMOND P. BOUCHER
                                                     SHEHNAZ M. BHUJWALA
                                                     PRISCILLA SZETO

                                                WILLIAMS CUKER BEREZOFSKY LLC

                                                _____

                                                ESTHER BEREZOFSKY
                                                SARAH HANSEL

                                                CHANDLER LAW

                                                _____

                                                STUART R. CHANDLER

                                                OWEN, PATTERSON & OWEN, LLP

                                                _____

                                                GREGORY OWEN, State Bar No. 102845
                                                *greg@owenpatterson.com*
                                                OWEN, PATTERSON & OWEN, LLP
                                                23822 W. Valencia Blvd., Suite 303
                                                Valencia, California, 91355
                                                Tel:    (661) 799-3899; Fax:  (661) 799-2774

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

1  <u>**PROOF OF SERVICE**</u>

2  **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3      At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 21600
4  Oxnard Street, Suite 600, Woodland Hills, CA 91367-4903.

5      On February 1, 2017, I served true copies of the following document(s) described as **SECOND AMENDED CLASS ACTION COMPLAINT** on the interested parties in this action
6  as follows:

7                    **SEE ATTACHED SERVICE LIST**

8      **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and
9  mailing, following our ordinary business practices.  I am readily familiar with the practice of Boucher LLP for collecting and processing correspondence for mailing.  On the same day that
10 correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I
11 am a resident or employed in the county where the mailing occurred.  The envelope was placed in the mail at Woodland Hills, California.

12
13      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

14      Executed on February 1, 2017, at Woodland Hills, California.

15
16  _____
17                    Maria Zarate
18
19
20
21
22
23
24
25
26
27
28

**SERVICE LIST**
*Karen Micheli, et. al. v. The City of Fresno, et. al.*
**Case No. 16CECG02937**

| | |
|---|---|
| DOUGLAS T. SLOAN, City Attorney | Attorneys for Defendant, |
| CITY OF FRESNO | City of Fresno |
| Francine M. Kanne, Chief Assistant City Attorney | |
| 2600 Fresno Street | |
| Fresno, CA 93721-3602 | |
| Telephone: (559) 621-7500 | |
| Facsimile: (559) 488-1084 | |
| Email: Francine.Kanne@ci.fresno.ca.us | |

| | |
|---|---|
| Jeffery L. Caufield, Esq. | Attorneys for Defendant, |
| Matthew D. McMillan, Esq. | City of Fresno |
| CAUFIELD & JAMES, LLP | |
| 8 2851 Camino Del Rio South, Suite 410 | |
| San Diego, CA 92108-3843 | |
| Telephone: (619) 325-0441 | |
| Facsimile: (619) 325-0231 | |
| Emails: ieff@caufieldiames.com | |
| mattm@caufieldianies.com | |

| | |
|---|---|
| Michael L. Renberg | Attorney for Defendant, |
| PARICHAN, RENBERG & CROSSMAN | Vulcan Construction and Maintenance, |
| LAW CORPORATION | Inc. |
| 1300 East Shaw Avenue, Suite 123 | |
| Fresno, California 93710 | |
| Telephone: (559)431-6300 | |
| Facsimile: (559)432-1018 | |
| Email: mrenberg@prcelaw.com | |

| | |
|---|---|
| Patrick S. Schoenburg | Attorneys for Defendant, |
| Christina H. Vo | Measurement Control Systems |
| WOOD SMITH HENNING & BERMAN, LLP | |
| 7112 N. Fresno Street, Suite 160 | |
| Fresno, CA 93720 | |
| Telephone: (559) 437-2860 | |
| Facsimile: (559) | |
| Emails: pschoenburg@wshblaw.com | |
| cvo@wshblaw.com | |

| | |
|---|---|
| Esther Berezofsky | Attorneys for Plaintiffs |
| Sarah Hansel | |
| WILLIAMS CUKER BEREZOFSKY, LLC | |
| 210 Lake Drive East, Suite 101 | |
| Cherry Hill, New Jersey, 08002 | |
| Telephone: (856) 667-0500 | |
| Facsimile: (856) 667-5133 | |
| Emails: eberezofsky@wbclegal.com | |
| shansel@wbclegal.com | |

1 | Stuart R. Chandler                  Attorney for Plaintiffs
CHANDLER LAW
2 | 761 E. Locust Ave, Suite 101
Fresno, California 93720
3 | Telephone: (559) 431-7770
Facsimile: (559) 431-7778
4 | Email: stuart@chandlerlaw.com

5 | Gregory Owen                     Attorneys for Plaintiffs
OWEN, PATTERSON & OWEN, LLP
6 | 23822 W. Valencia Blvd., Suite 303
Valencia, California, 91355
7 | Telephone: (661) 799-3899
Facsimile: (661) 799-2774
8 | Email: greg@owenpatterson.com

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

1  Brian S. Kabateck (SBN 152054)
   bsk@kbklawyers.com
2  Christopher B. Noyes (SBN 270094)
   cn@kbklawyers.com
3  Joana Fang (SBN 309623)
   jf@kbklawyers.com
4  **KABATECK BROWN KELLNER LLP**
   644 S. Figueroa Street
5  Los Angeles, California 90017
   Phone:    (213) 217-5000
6  Facsimile: (213) 217-5010

7  Frank M. Pitre (SBN 100077)
   fpitre@cpmlegal.com
8  Julie L. Fieber (SBN 202857)
   jfieber@cpmlegal.com
9  John P. Thyken (SBN 286598)
   jthyken@cpmlegal.com
10 **COTCHETT, PITRE & McCARTHY, LLP**
   840 Malcolm Road, Suite 200
11 Burlingame, California 94010
   Phone:    (650) 697-6000
12 Facsimile: (650) 697-0577

   Michael E. Gatto (SBN 196474)
   mgatto@vanbloislaw.com
   **VAN BLOIS & ASSOCIATES**
   7677 Oakport Street, Suite 565
   Oakland, California 94621
   Phone:    (510) 635-1284
   Facsimile: (510) 635-1516

13

14 Attorneys for Plaintiffs

15 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16 **FOR THE COUNTY OF FRESNO**

E-FILED
05/17/2017
FRESNO COUNTY SUPERIOR COURT
By: M. Sanchez, Deputy

17 JACKIE FLANNERY, individually
   and on behalf of all others similarly
18 situated; GUADALUPE MEZA,
   individually and on behalf of all others
19 similarly situated; RONDA RAFIDI,
   individually and on behalf of all others
20 similarly situated; SHANN CONNER,
   individually and on behalf of all others
21 similarly situated; MARIROSE
   LARKINS, individually and on behalf
22 of all others similarly situated;
   PATRICIA WALLACE-RIXMAN aka
23 PATTY WALLACE-RIXMAN,
   individually and on behalf of all others
24 similarly situated; HARRY RIXMAN,
   individually and on behalf of all others
25 similarly situated; KELLY UNRUH,
   individually and on behalf of all others
26 similarly situated,

27            Plaintiffs,

28        v.

   THE CITY OF FRESNO, a municipal

Case No: 17CECG01724

**CLASS ACTION**

**CLASS ACTION COMPLAINT for:**

1. **Inverse Condemnation;**
2. **Negligence;**
3. **Nuisance;**
4. **Breach of Contract;**
5. **Unjust Enrichment;**
6. **Breach of Implied Warranty; and**
7. **Negligence**

**REQUEST FOR JURY TRIAL**

---

CLASS ACTION COMPLAINT

corporation; VULCAN CONSTRUCTION & MAINTENANCE, INC., a California corporation; MEASUREMENT CONTROL SYSTEMS, a California corporation; and DOES 1-100, inclusive,

           Defendants.

CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND NATURE OF THE ACTION ........................................................ 1

II. JURISDICTION AND VENUE ........................................................................ 5

III. PARTIES .............................................................................................. 5

    A. Plaintiffs ........................................................................................ 5

    B. Defendants ...................................................................................... 10

IV. GENERAL ALLEGATIONS ........................................................................... 11

    A. The City Of Fresno's Decision To Change The Water Source By Introducing
    Surface Water Caused The Corrosion Of Pipes Used To Deliver Water To The
    Residents Of Fresno. ............................................................................ 12

V. CLASS ACTION ALLEGATIONS .................................................................... 15

VI. CAUSES OF ACTION ................................................................................. 20
    FIRST CAUSE OF ACTION
    INVERSE CONDEMNATION ....................................................................... 20

    SECOND CAUSE OF ACTION
    NEGLIGENCE ........................................................................................ 22

    THIRD CAUSE OF ACTION
    PRIVATE NUISANCE .............................................................................. 28

    FOURTH CAUSE OF ACTION
    BREACH OF CONTRACT ........................................................................... 29

    FIFTH CAUSE OF ACTION
    UNJUST ENRICHMENT ............................................................................ 30

    SIXTH CAUSE OF ACTION
    BREACH OF IMPLIED WARRANTY .............................................................. 31

    SEVENTH CAUSE OF ACTION
    NEGLIGENCE ........................................................................................ 31

VII. PRAYER FOR RELIEF ............................................................................... 33

1    Plaintiffs JACKIE FLANNERY, GUADALUPE MEZA, RONDA RAFIDI, SHANN

2    CONNER, MARIROSE LARKINS, PATRICIA WALLACE-RIXMAN aka PATTY

3    WALLACE-RIXMAN ("PATRICIA WALLACE-RIXMAN"), HARRY RIXMAN, and KELLY

4    UNRUH, by and through their undersigned counsel, bring this individual and class action against

5    defendants THE CITY OF FRESNO, a municipal corporation (the "CITY"), VULCAN

6    CONSTRUCTION & MAINTENANCE, INC., a California corporation ("VULCAN"),

7    MEASUREMENT CONTROL SYSTEMS, a California corporation ("MEASURMENT

8    CONTROL") (VULCAN and MEASUREMENT CONTROL are collectively referred to as the

9    "WATER METER INSTALLERS"), and DOES 1-100, inclusive (collectively, "Defendants"),

10   on behalf of themselves and all persons residing within and around the Northeast Fresno,

11   California, area whose homes and plumbing have been damaged from aggressive, corrosive,

12   degraded, and substandard water supplied by the CITY's Northeast Surface Water Treatment

13   Facility ("NESWTF").

14   **I.      INTRODUCTION AND NATURE OF THE ACTION**

15        1.      As recently exposed in shocking detail by Reuters Neuroscience reporters Joshua

16   Schneyer and M.B. Pell:

17            "Dozens of California communities have experienced recent rates
            of childhood lead poisoning that surpass those of Flint, Michigan,
18          **with one Fresno locale showing rates nearly three times
            higher…**"

19                                                           March 17, 2017



CLASS ACTION COMPLAINT

2.     This case shines a spotlight on how the CITY, rather than protecting its residents from the dangers of lead in its drinking water, actively promoted, designed and approved changes to its water supply systems that it knew would likely lead to the risk of corrosion and leaching of metals in its piping, including the introduction of iron and lead into residents' drinking water.

3.     For decades, the CITY has relied exclusively on groundwater from more than 250 deep wells to supply its residents with potable water. With a growing population, ongoing drought conditions, and concerns of over-drafting its groundwater, the CITY saw a need to develop an additional source of water to supply homes in the City of Fresno. As a result, in 2004 the CITY brought online the NESWTF despite knowing that introducing surface water into its water supply would likely cause corrosion and damage to the many homes in Northeast Fresno with galvanized piping. The CITY had knowledge *before* activating the NESWTF that:

- changing the CITY's water source would likely cause degradation in the water's aesthetic quality ("colored water") since a new water source with an entirely different chemical composition was being introduced to pipes that were previously acclimated to the characteristics of a particular source of water;
- potential water quality issues may manifest in the form of increased release of particulates, red water episodes, and the increased corrosion on the base metal of the piping's wall.

Since the NESWTF's activation, a large number of residents within and around Northeast Fresno began experiencing issues with their water, including discoloration.

4.     In or about January 2016, the CITY launched an investigation into water problems based on reports from over three hundred residents of the Northeast area of Fresno, California. Testing conducted on the water in numerous homes, including the homes of Plaintiffs, revealed corrosive damage to Plaintiffs' plumbing and the presence of lead, iron, and other toxic contaminants at levels in excess of allowable limits in the drinking water supplied to them by the CITY. An analysis completed by consultants hired by the CITY confirmed that the probable cause of discoloration in these residents' water and corrosion in their galvanized piping

was the CITY's addition of treated surface water into the water distribution system that previously relied solely on groundwater from the wells in and around the City. Examples of the corroded pipes are depicted in the photographs below:




An example of what the water at issue looks like is depicted here:



5.     This class action is brought on behalf of Northeast Fresno residents who, like Plaintiffs, were supplied municipal water by the CITY through the NESWTF. As a result of Defendants' deliberate decision and/or wrongful conduct, Plaintiffs — and identifiable Class members — have suffered harm and injuries including, but not limited to, damaged pipes and plumbing, diminished property values, the cost of remediation and re-plumbing, the cost of contaminated water, and the cost of diagnostic testing related to their ongoing and continuous exposure to lead and other contaminants. Specifically, the injuries of Plaintiffs and the members of the Class are a result of:

a.     The CITY, having constructed the NESWTF in furtherance of public objectives to provide additional water to residents of the city, took a calculated risk that

damage might occur to some residents' properties with galvanized pipe, including the plumbing of homeowners in Northeast Fresno receiving water from the NESWTF as designed and constructed;

b.      The CITY's failure to comply with the regulatory scheme, which includes legislatively-mandated water testing, notification, and reporting requirements including but not limited to the Environmental Protection Agency's ("EPA") Lead and Copper rule (the "Fed. LCRs"), 40 C.F.R. § 141.80 et seq., and California's Lead and Copper rule ("Cal. LCRs"), 22 C.C.R § 64670 et seq.;

c.      The CITY's maintenance and operation of its NESWTF relating to the function and purpose of the plant as conceived including, but not limited to, the introduction of the surface water to the existing groundwater system without appropriate treatment to address the changing chemistry and its impact on the CITY's water supply, which caused it to deliver highly aggressive and corrosive water; and

d.      The CITY and WATER METER INSTALLERS' negligent installation of pipe connections between Plaintiffs' and Class members' homes and the public water supply, which caused the pipes connecting the CITY's water supply to Plaintiffs and Class members' properties to corrode and leach lead and other toxic metals into their drinking water.

6.      Notwithstanding knowledge to the contrary, the CITY has continually denied responsibility for issues relating to the water supply it delivers and claims that the water is not defective or harmful to people or property. The CITY was aware that these issues would likely manifest at the time it undertook to build and develop the NESWTF.

7.      A report by HDR Engineering, Inc., drafted in 1998, alerted the CITY that the NESWTF, as deliberately designed and conceived, might cause damage to occur in the homes and plumbing of Northeast Fresno homeowners with galvanized piping. The report warned the CITY that introducing treated surface water into its water distribution system would change the water's chemistry make up, strip Plaintiffs' galvanized piping of its zinc coating, and cause ongoing and continuous damage to their homes.

8.      Despite longstanding knowledge of the cause of Plaintiffs' and Class members' water problems, the CITY continued to misrepresent to Plaintiffs and the Class members that the problems were harmless and not the result of any action on the part of the CITY.

9.      On or about September 16, 2016, Dr. Vernon L. Snoeyink and Water Quality & Treatment Solutions, Inc., consultants hired by the CITY to evaluate the water problems in Fresno, submitted a report to the CITY. The report concluded and confirmed that the likely cause of the discolored water problem is the CITY's introduction of treated surface water into a water system that for decades relied solely upon groundwater. The report further acknowledged that the discoloration issue will not be completely eliminated so long as the NESWTF continues supplying water to homes with galvanized piping installed.

## II.     JURISDICTION AND VENUE

10.    This Superior Court has jurisdiction over this matter pursuant to California Code of Civil Procedure section 410.10. Both the individual and aggregate monetary damages and restitution sought herein exceed the minimal jurisdictional limits of the Superior Court and will be established at trial, according to proof.

11.    This Superior Court has personal jurisdiction over Defendants because they are entities and/or persons with sufficient minimum contacts in California, are citizens of California, or have contacts with California so as to render the exercise of jurisdiction over them by this court consistent with traditional notions of fair play and substantial justice.

12.    Venue is proper in the Superior Court of California, Fresno County, pursuant to Code of Civil Procedure sections 394(a), 395(a), and 395.5. Furthermore, this Court is the proper venue because a substantial amount of Defendants' conduct occurred in this County and because Plaintiffs reside in and were injured in this County.

## III.    PARTIES

### A.     Plaintiffs

13.    Plaintiff JACKIE FLANNERY is a citizen of the State of California and a resident of the County of Fresno. Plaintiff JACKIE FLANNERY purchased and has lived in her Northeast Fresno, California area home since 1996. During the relevant time period, Plaintiff

1 JACKIE FLANNERY was unaware of the corrosive nature and growing toxicity of the

2 discolored water supplied to her by the CITY, and regularly drank and used the water for certain,

3 normal household purposes. As a result of Defendants' actions and/or inactions, as set forth

4 herein, the pipes supplying water from the CITY to her home have corroded and caused lead in

5 excess of permissible levels to leach into the water entering her home. The CITY, through its

6 misrepresentations and/or omissions, led Plaintiff JACKIE FLANNERY to believe that pipes on

7 her property were the source of the water problems and that the water was safe for all purposes.

8 Plaintiff JACKIE FLANNERY has suffered significant harm including, but not limited to the

9 diminution of her property value, other economic harm, ongoing exposure to excessive levels of

10 lead and other toxic substances, as well as substantial and unreasonable interference with her

11 comfortable enjoyment of life and property. Plaintiff JACKIE FLANNERY has substantially

12 complied with all applicable notice and claim requirements of the California Tort Claims Act

13 (Cal. Govt. Code § 810 *et seq.*).

14     14. Plaintiff GUADALUPE MEZA is a citizen of the State of California and a

15 resident of the County of Fresno. Plaintiff GUADALUPE MEZA purchased and has lived in her

16 Northeast Fresno, California area home since 1990. During the relevant time period, Plaintiff

17 GUADALUPE MEZA was unaware of the corrosive nature and growing toxicity of the

18 discolored water supplied to her by the CITY, and regularly drank and used the water for certain,

19 normal household purposes. As a result of Defendants' actions and/or inactions, as set forth

20 herein, the pipes supplying water from the CITY to her home have corroded. The CITY, through

21 its misrepresentations and/or omissions, led Plaintiff GUADALUPE MEZA to believe that pipes

22 on her property were the source of the water problems and that the water was safe for all

23 purposes. Plaintiff GUADALUPE MEZA has suffered significant harm including, but not

24 limited to the diminution of her property value, other economic harm, ongoing exposure to

25 excessive levels toxic substances, as well as substantial and unreasonable interference with her

26 comfortable enjoyment of life and property. Plaintiff GUADALUPE MEZA has substantially

27 complied with all applicable notice and claim requirements of the California Tort Claims Act

28 (Cal. Govt. Code § 810 *et seq.*).

15.     Plaintiff RONDA RAFIDI is a citizen of the State of California and a resident of the County of Fresno. Plaintiff RONDA RAFIDI purchased and has lived in her Northeast Fresno, California area home since 2003. During the relevant time period, Plaintiff RONDA RAFIDI was unaware of the corrosive nature and growing toxicity of the discolored water supplied to her by the CITY, and regularly drank and used the water for certain, normal household purposes. The CITY, through its misrepresentations and/or omissions, led Plaintiff RONDA RAFIDI to believe that pipes on her property were the source of the water problems and that the water was safe for all purposes. As a result of Defendants' actions and/or inactions, as set forth herein, the pipes supplying water from the CITY to her home have corroded and caused lead in excess of permissible levels to leach into the water entering her home. The CITY, through its misrepresentations and/or omissions, led Plaintiff RONDA RAFIDI to believe that pipes on her property were the source of the water problems and that the water was safe for all purposes. Plaintiff has suffered significant harm including, but not limited to the diminution of her property value, other economic harm, ongoing exposure to excessive levels of lead and other toxic substances, as well as substantial and unreasonable interference with her comfortable enjoyment of life and property. Plaintiff RONDA RAFIDI has substantially complied with all applicable notice and claim requirements of the California Tort Claims Act (Cal. Govt. Code § 810 *et seq.*).

16.     Plaintiff SHANN CONNER is a citizen of the State of California and a resident of the County of Fresno. Plaintiff SHANN CONNER purchased and has lived in her Northeast Fresno, California area home since 2001. During the relevant time period, Plaintiff SHANN CONNER was unaware of the corrosive nature and growing toxicity of the discolored water supplied to her by the CITY, and regularly drank and used the water for certain, normal household purposes. As a result of Defendants' actions and/or inactions, as set forth herein, the pipes supplying water from the CITY to her home have corroded and caused lead in excess of permissible levels to leach into the water entering her home. The CITY, through its misrepresentations and/or omissions, led Plaintiff SHANN CONNER to believe that pipes on her property were the source of the water problems and that the water was safe for all purposes.

1   Plaintiff has suffered significant harm including, but not limited to the diminution of her property
2   value, other economic harm, ongoing exposure to excessive levels of lead and other toxic
3   substances, as well as substantial and unreasonable interference with her comfortable enjoyment
4   of life and property. Plaintiff SHANN CONNER has substantially complied with all applicable
5   notice and claim requirements of the California Tort Claims Act (Cal. Govt. Code § 810 *et seq.*).

6       17.     Plaintiff MARIROSE LARKINS is a citizen of the State of California and a
7   resident of the County of Fresno. Plaintiff MARIROSE LARKINS purchased and has lived in
8   her Northeast Fresno, California area home since 2000. During the relevant time period,
9   Plaintiff MARIROSE LARKINS was unaware of the corrosive nature and growing toxicity of
10  the discolored water supplied to her by the CITY, and regularly drank and used the water for
11  certain, normal household purposes. As a result of Defendants' actions and/or inactions, as set
12  forth herein, the pipes supplying water from the CITY to her home have corroded and caused
13  lead in excess of permissible levels to leach into the water entering her home. The CITY,
14  through its misrepresentations and/or omissions, led Plaintiff MARIROSE LARKINS to believe
15  that pipes on her property were the source of the water problems and that the water was safe for
16  all purposes. Plaintiff has suffered significant harm including, but not limited to the diminution
17  of her property value, other economic harm, ongoing exposure to excessive levels of lead and
18  other toxic substances, as well as substantial and unreasonable interference with her comfortable
19  enjoyment of life and property. Plaintiff MARIROSE LARKINS has substantially complied
20  with all applicable notice and claim requirements of the California Tort Claims Act (Cal. Govt.
21  Code § 810 *et seq.*).

22      18.     Plaintiff PATRICIA WALLACE-RIXMAN is a citizen of the State of California
23  and a resident of the County of Fresno. Plaintiff purchased and has lived in her Northeast
24  Fresno, California area home since 1989. During the relevant time period, Plaintiff PATRICIA
25  WALLACE-RIXMAN was unaware of the corrosive nature and growing toxicity of the
26  discolored water supplied to her by the CITY, and regularly drank and used the water for certain,
27  normal household purposes. As a result of Defendants' actions and/or inactions, as set forth
28  herein, the pipes supplying water from the CITY to her home have corroded and caused lead in

excess of permissible levels to leach into the water entering her home. The CITY, through its misrepresentations and/or omissions, led Plaintiff PATRICIA WALLACE-RIXMAN to believe that pipes on her property were the source of the water problems and that the water was safe for all purposes. Plaintiff has suffered significant harm including, but not limited to the diminution of her property value, other economic harm including the cost of re-plumbing her home, ongoing exposure to excessive levels of lead and other toxic substances, as well as substantial and unreasonable interference with her comfortable enjoyment of life and property. Plaintiff PATRICIA WALLACE-RIXMAN has substantially complied with all applicable requirements of the California Tort Claims Act (Cal. Govt. Code § 810 *et seq.*).

19. Plaintiff HARRY RIXMAN is a citizen of the State of California and a resident of the County of Fresno. Plaintiff purchased and has lived in his Northeast Fresno, California area home since 1989. During the relevant time period, Plaintiff HARRY RIXMAN was unaware of the corrosive nature and growing toxicity of the discolored water supplied to him by the CITY, and regularly drank and used the water for certain, normal household purposes. As a result of Defendants' actions and/or inactions, as set forth herein, the pipes supplying water from the CITY to his home have corroded and caused lead in excess of permissible levels to leach into the water entering his home. The CITY, through its misrepresentations and/or omissions, led Plaintiff HARRY RIXMAN to believe that pipes on his property were the source of the water problems and that the water was safe for all purposes. Plaintiff has suffered significant harm including, but not limited to the diminution of his property value, other economic harm including the cost of re-pluming his home, ongoing exposure to excessive levels of lead and other toxic substances, as well as substantial and unreasonable interference with her comfortable enjoyment of life and property. Plaintiff HARRY RIXMAN has substantially complied with all applicable requirements of the California Tort Claims Act (Cal. Govt. Code § 810 *et seq.*).

20. Plaintiff KELLY UNRUH is a citizen of the State of California and a resident of the County of Fresno. Plaintiff purchased and has lived in her Northeast Fresno, California area home since 1991. During the relevant time period, Plaintiff KELLY UNRUH was unaware of the corrosive nature and growing toxicity of the discolored water supplied to her by the CITY,

1    and regularly drank and used the water for certain, normal household purposes. As a result of
2    Defendants' actions and/or inactions, as set forth herein, the pipes supplying water from the
3    CITY to her home have corroded and caused lead in excess of permissible levels to leach into the
4    water entering her home. The CITY, through its misrepresentations and/or omissions, led
5    Plaintiff KELLY UNRUH to believe that pipes on her property were the source of the water
6    problems and that the water was safe for all purposes. Plaintiff KELLY UNRUH has suffered
7    significant harm including, but not limited to the diminution of her property value, other
8    economic harm including the cost of re-plumbing her home, ongoing exposure to excessive
9    levels of lead and other toxic substances, as well as substantial and unreasonable interference
10   with her comfortable enjoyment of life and property. Plaintiff KELLY UNRUH has
11   substantially complied with all applicable requirements of the California Tort Claims Act (Cal.
12   Govt. Code § 810 *et seq.*).

### B.    Defendants

14   21.    Defendant CITY is a municipal corporation, duly organized and existing under
15   the laws of the State of California. The CITY, by and through its Department of Public Utilities,
16   provides municipal services to its residents such as disposing garbage, collecting recycling, and
17   supplying water. The CITY's Department of Public Utilities oversees the Water Division, which
18   manages and operates the CITY's public water system. Defendant CITY's Department of Public
19   Utilities delivers drinking water to approximately 500,000 urban residential, commercial, and
20   industrial customers within the City of Fresno.

21   22.    Defendant VULCAN is a general engineering contractor with its principal place
22   of business in Fresno, California. The company provides services relating to the installation of
23   water meter systems. On or about May 6, 2010, the Director of the CITY's Department of
24   Public Utilities submitted a report to the CITY's City Council recommending that the CITY's
25   City Council award a contract to VULCAN to install water meters in the City of Fresno.

26   23.    Defendant MEASUREMENT CONTROL is a California-based distributor of
27   water meters and offers installation services with its principal place of business in Santa Ana,
28   California. On or about June 3, 2010, the Director of the CITY's Department of Public Utilities

1  submitted a report to the CITY's City Council recommending that the CITY's City Council

2  award a contract to MEASUREMENT CONTROL to install water meters in the City of Fresno.

3      24.    Defendants DOES 1-100: Plaintiffs are unaware at this time of the true names and

4  capacities of the defendants sued herein as DOES 1-100, inclusive, and therefore they sue these

5  defendants by such fictitious names. Plaintiffs are informed and believe that each of the

6  fictitious named defendants are legally responsible in some manner for the occurrences herein

7  alleged, assisted in and about the wrongs complained herein by providing financial support,

8  advice, resources, and/or other assistance. Plaintiffs will amend this complaint to allege their

9  true names and capacities when ascertained.

10      25.    Unless otherwise specified, "Defendants" as used herein shall refer collectively to

11  Defendants CITY, VULCAN, MEASUREMENT CONTROL, and DOES 1-100, inclusive.

12      26.    At all relevant times, each of the Defendants was the agent, servant, employee,

13  co-conspirator, alter ego, and/or joint venturer of each of the other Defendants. In doing the

14  things herein alleged, each and every Defendant was acting within the course and scope of this

15  agency, employment, conspiracy, alter ego, and/or joint venture, and was acting with the

16  consent, permission, and authorization of each of the other Defendants. All actions of each of

17  the Defendants, as alleged in the causes of action stated herein, were ratified, approved, and/ or

18  authorized by every other Defendant with full knowledge of such acts. Defendants are thus

19  jointly and severally liable for such actions.

20  **IV.   GENERAL ALLEGATIONS**

21      27.    The allegations in this Complaint are based upon information and belief, except

22  for those allegations pertaining to the Plaintiffs named herein and their counsel. Plaintiffs'

23  information and beliefs are based upon, inter alia, the investigation conducted to date by

24  Plaintiffs and their counsel. Each allegation in this Complaint either has evidentiary support or is

25  likely to have evidentiary support upon further investigation and discovery. All allegations made

26  herein are pled in the alternative to the extent they present any actual conflict.

27  / / /

28  / / /

A.    **The City Of Fresno's Decision To Change The Water Source By Introducing Surface Water Caused The Corrosion Of Pipes Used To Deliver Water To The Residents Of Fresno.**

28.    Historically, the CITY relied exclusively on water from groundwater wells with relatively high mineral content as its source of water to service. As a result, the zinc coating of the galvanized piping in homes developed a protective barrier to corrosion. Groundwater is extremely non-corrosive to galvanized piping.

29.    However, in or around 2004, the CITY constructed a public improvement to increase its water supply to the growing Northeast Fresno community, and in doing so it changed its primary water source by introducing surface water from Kings River and San Joaquin River, received through the Enterprise Canal, treated at the NESWTF. The NESWTF supplies more than 20 million gallons of water per day to thousands of homes in the Northeast area of Fresno, California. As designed and conceived the NESWTF water causes damage to Plaintiffs' and Class members' homes.

30.    In or about 1998, well before the activation of the NESWTF, the CITY retained a consultant, HDR Engineering, Inc., to evaluate the consequences of changing the water supply source from groundwater to combined or blended groundwater and surface water from the Enterprise Canal. In its 1998 report drafted to the CITY, HDR Engineering, Inc. advised the CITY that changing its water source would likely cause degradation in the water's aesthetic quality ("colored water") since a new water source with an entirely different chemical composition was being introduced to pipes that were previously acclimated to the characteristics of a particular source of water. The 1998 report further warned that potential water quality issues may manifest in the form of increased release of particulates, red water episodes, and the increased corrosion on the base metal of the piping's wall.

31.    The groundwater previously supplied by the CITY to the homes of Fresno, including the homes of Plaintiffs and the Class members, was heavily mineralized with a moderate concentration of alkalinity and hardness. On the other hand, Enterprise Canal surface water, as designed, conceived, and maintained, has a far lower mineral content, lower overall

12

1  hardness, and a lower chloride and sulfate content. Whereas the previously-supplied
2  groundwater did not cause corrosion or harm to the homes or piping systems in the homes of
3  Northeast Fresno, the blended Enterprise Canal water and groundwater has caused and continues
4  to cause such corrosion and harm.

5      32.    The 1998 report informed the CITY that there would be a strong likelihood of
6  corrosion in galvanized piping due to the significant differences in these water sources' inorganic
7  character. The CITY knew that modifying its water source from heavily mineralized
8  groundwater with moderate concentrations of alkalinity and hardness, a significant contribution
9  of chloride, sulfate, and other inorganic constituents, to combined groundwater and surface
10  water, which contains a significantly different chemical composition, would have adverse effects
11  on the galvanized pipes by destabilizing the material built up in the pipes in most of the
12  Northeast Fresno residents' homes, including the homes of Plaintiffs and the Class members.

13      33.    The CITY at the time knew that "galvanized piping predominates with well over
14  50% of the installation in Fresno households." The CITY knew that providing water from the
15  NESWTF as designed and conceived would cause these homes to be susceptible to discoloration
16  in their water and corrosion in their piping, which would likely lead to the leaching of metals,
17  including toxic metals such as iron and lead, into the water that Fresno residents drink or
18  otherwise ingest and use, and ultimately require replacement of as a result.

19      34.    The above notwithstanding, the CITY constructed the NESWTF which went into
20  operation in 2004, with the inherent risk that surface water used to provide for the growing
21  demand of the public would cause damage and injury to those homes with galvanized pipes by
22  stripping their protective zinc coating and causing corrosion. After the NESWTF became active
23  and began combining the ground and surface waters, the CITY's Department of Public Utilities,
24  namely its Water Division, began receiving complaints from a few Fresno residents who had not
25  previously experienced water quality problems.

26      35.    For several months prior to January 2016, the CITY began receiving increasing
27  complaints relating to its water quality. As a result, it publicly disclosed the issue and undertook
28  an investigation.

36.   In or around September 2016, a report prepared by hired consultants Dr. Vernon
L. Snoeyink and Water Quality & Treatment Solutions, Inc. analyzed the test results and
examined extracted pipes from some of the affected homes. The report confirmed that the
NESWTF water was causing galvanized piping in the homes to be damaged and to corrode. The
report also concluded that the more likely cause of the discolored water was the CITY's
introduction of treated NESWTF water into a water system that had served groundwater for
decades. The CITY's deliberate decision to continuously switch its water source back and forth
between groundwater and surface water only served to intensify the problem.

37.   The September 2016 report proffered a number of recommendations to the CITY,
including informing its residents to let the water run for a period of time to reduce the
concentration of lead in their water and replacing the corroded galvanized piping in their homes.

38.   Notwithstanding the CITY's continued representations that its water supply was
clean, safe, and reliable, in approximately 2005 or 2006, the CITY nevertheless provided a select
and favored number of residents in the CITY with ongoing supplies of bottled water, which
continues to this day, for everyday use, including drinking, showering, and cooking. The CITY
did not offer safe bottled drinking water to members of the Class, nor did it disclose to Plaintiffs
and Class members the fact that it was preferentially providing safe drinking water to a select
few resident of Northeast Fresno.

39.   CITY officials also failed to report the results of tests revealing contaminated and
discolored water in its water supply to the State of California or take sufficient system-wide
measures to remedy the problem in order to mitigate or prevent further damages to its residents
and their properties. Instead, the CITY denied having knowledge of the widespread issue,
contending that it had only recently discovered the issue in January 2016.

40.   The CITY ignored irrefutable evidence, before January 2016, that the water
supplied to residents of Northeast Fresno was not and is not potable or safe, and exposed and
continues to expose these residents, including Plaintiffs and Class members, to toxic metals such
as lead, which caused and continues to cause residents to suffer property damage, other
economic losses, and the risk of serious health hazards.

1    41.    At all times relevant herein, Defendants, and each of them, concealed and omitted

2    relevant facts that would have allowed Plaintiffs and Class members to discover the true nature

3    and degree of the water contamination issues.  As a result of these misrepresentations and

4    omissions, equitable tolling of the statute of limitations applies as to the claims asserted by

5    Plaintiffs and the Class members.  Any applicable statute of limitations that might otherwise bar

6    certain of the claims at issue should be tolled because Defendants, and each of them, actively

7    misled Plaintiffs and the Class members through affirmative representations and omissions with

8    respect to the true nature, quality, and hazards of use of the water as described herein and above.

9    42.    Plaintiffs and Class members exercised due diligence to discover Defendants'

10   wrongdoings.  However, such wrongdoing and/or the full extent and degree of such wrongdoing

11   was not reasonably discoverable prior to the date of the filing of this action and/or prior to the

12   statutory period for the filing of this action and since Defendants, and each of them, concealed

13   their wrongdoing through misrepresentations and omissions, Plaintiffs exercised due diligence

14   by promptly filing this Complaint after discovering the facts giving rise to these claims.

15   **V.    CLASS ACTION ALLEGATIONS**

16   43.    Plaintiffs bring this class action individually and on behalf of all others similarly

17   situated pursuant to California Code of Civil Procedure section 382.  This action may be brought

18   and properly maintained as a class action because Plaintiffs satisfy the numerosity, adequacy,

19   typicality, and commonality pre-requisites for suing as a representative party pursuant to

20   California Code of Civil Procedure section 382.

21   44.    Plaintiffs seek to represent a Class defined as follows:

22

23   All individuals and entities in the Northeast Fresno, California area who own or
     lease real property receiving water from the City of Fresno's Northeast Surface
     Water Treatment Facility who have been harmed in their person or property,
24   including:

25       All persons and entities in Northeast Fresno, California area who have
         sustained harm by Defendants' decision to activate, operate, and maintain
26       the Northeast Fresno Water Treatment Facility as deliberately planned,
         constructed, and maintained;
27
         All persons and entities in the Northeast Fresno, California area who have
28       sustained harm by Defendants' violation of federal and state Lead and

15

Copper Rule requirements to operate and maintain appropriate and optimal corrosion control treatment (40 C.F.R. § 141.80 *et seq.* and 22 C.C.R. § 64670 *et seq.*);

All persons and entities in the Northeast Fresno, California who have sustained harmed by the City of Fresno's Violation of the federal Lead and Copper Rule's requirement to notify customers of their individual test results of tap water samples tested for lead within thirty days after receiving the results.( 40 C.F.R. § 141.85(d)(2));

All persons and entities in the Northeast Fresno, California area whose water was tested for lead and had lead in their water at levels in excess of the EPA's Action Level standard; and

All persons and entities in the Northeast Fresno, California area who own or lease real property fitted with galvanized pipes and receive water from the City of Fresno at any time during the relevant statutory period.

45. At all relevant times, Plaintiffs named herein were and are within the proposed Class as described above.

46. Excluded from the proposed Class are Defendants; the officers, directors, and employees of Defendants; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, and/or heir or assign of Defendants; also excluded is any judicial officer presiding over this action. Plaintiffs reserve the right to modify the proposed class definition and to add or modify subclasses.

47. <u>Numerosity.</u> The proposed Class is so numerous that joinder of all members is unfeasible and impractical. The CITY maintains that its NESWTF supplies more than 20 million gallons of water per day to thousands of homes in the Northeast Fresno area, and more than 1,500 residents have complained to the CITY about issues relating to their water. In addition, the CITY has reported that over 300 homes tested reveal levels of lead and nearly 120 of them have lead levels in excess of acceptable thresholds. The proposed Class is sufficiently numerous, making individual joinder of Class members' claims impracticable.

48. <u>Ascertainability.</u> Class members are ascertainable through the CITY and State of California's public records. Moreover, the CITY has conducted water testing throughout Fresno, and has sent monthly reports with such information to the State of California. This action is properly suited for class action treatment because a well-defined community of interest in the litigation exists and the proposed class is readily and easily ascertainable.

49.     Typicality.  Plaintiffs' claims are typical of the claims of all members of each Class that Plaintiffs seek to represent because all members of the Class sustained injuries arising out of Defendants' common course of conduct in violation of law and the injuries of all members of the Class were caused by Defendants' wrongful conduct in violation of law, as alleged herein. Plaintiffs, like all Class members, have been harmed by Defendants' misconduct and failure to act, and Plaintiffs have suffered harm and incurred damages and losses related to the aggressive, corrosive, degraded, and substandard water supplied by the CITY's public water system, which caused the corrosion of pipes and Plaintiffs to be exposed to an excess levels of lead, iron, and other hazardous substances.  Furthermore, the CITY's failure to test, report, and investigate its issues with its water supply and notify and warn the public of the same is the basis of these Defendants' misconduct.  These actions and/or failures to act represent a common course of misconduct that caused harm to Plaintiffs and Class members.

50.     Adequacy.  Plaintiffs are adequate representatives of the class they seek to represent and will fairly protect the interests of Class members.  Plaintiffs' interests do not conflict with Class members' interests.  Plaintiffs have no interest antagonistic to those of Class members, and Defendants have no defenses unique to Plaintiffs.  Plaintiffs have retained counsel competent and experienced in complex class action litigations, and Plaintiffs intend to vigorously pursue favorable resolution of this suit on behalf of themselves and the members of the Class.

51.     Predominant Common Questions of Law and/or Fact.  There is a well-defined community of interest and common questions of law and fact exist as to all members of the proposed Class and predominate over questions affecting only individual Class members; these common questions will drive the resolution of this litigation.  Common questions applicable to all classes include:

      a.     Whether Defendants engaged in the conduct alleged herein;

      b.     Whether the CITY undertook a public improvement by developing and bringing online the NESWTF;

      c.     Whether the NESWTF as deliberately designed and conceived damaged Plaintiffs' and Class members' homes;

d. Whether the CITY was acting in furtherance of its public objectives to provide additional water to its residents by developing, building, and maintaining the NESWTF;

e. Whether the CITY was taking a calculated risk that damage to Plaintiffs' and Class members' plumbing and homes may occur;

f. Whether the CITY owed a duty to Plaintiffs and Class members by operating and maintaining the NESWTF that provides over 20 million gallons of water per day to over thousands of residents in Fresno;

g. Whether the CITY acted reasonably in the operation and maintenance of the NESWTF;

h. Whether the CITY was negligent in its operation and maintenance of its public water system;

i. Whether the CITY complied with the mandatory duty to test the municipal water supply in conformance with requirements under the federal Safe Drinking Water Act, 42 U.S.C. § 300f *et seq.*, the California Safe Water Drinking Act, Cal. Health & Saf. Code § 116270 *et seq.*, the Fed. LCRs, 40 C.F.R. § 141.80 *et seq.*, and the Cal. LCRs, 22 C.C.R. 64670 *et seq.*;

j. Whether the CITY breached a duty to Plaintiffs and Class members to notify them of the lead contamination in their water supply;

k. Whether the CITY was negligent in not reporting the complaints or taking corrective action upon discovery of these water issues;

l. Whether the CITY made unlawful, misleading, and false representations or material omissions with respect to the drinkability and safety of the CITY's public water system;

m. Whether Defendants' actions and inactions were a substantial factor in causing harm to Plaintiffs and Class members;

n. Whether Defendants' misconduct constitutes interference with Plaintiffs' and Class members' enjoyment of their lives and properties;

1    o.    Whether Defendants have caused a nuisance;

2    p.    Whether Defendants have violated any California statutes;

3    q.    Whether the CITY's actions or inactions breached its contracts with

4    Plaintiffs and Class members for water services;

5    r.    Whether the CITY was unjustly enriched by their actions or inactions

6    alleged herein;

7    s.    Whether the CITY breached implied warranties to Plaintiffs and Class

8    members by their actions or inactions alleged herein;

9    t.    Whether the Defendants were negligent in their installation of the water

10   meters in residents' homes;

11   u.    Whether Defendants breached their duties to Plaintiffs and Class members

12   regarding the installation of water meters;

13   v.    Whether Defendants' breaches of duty to Plaintiffs and Class members

14   was the actual and proximate cause of Plaintiffs' and Class members' injuries;

15   w.    Whether it was reasonably foreseeable that Defendants' failure to properly

16   test, investigate, report, and install water meters would result in harm including property

17   damages and economic damages;

18   x.    Whether Defendants' misconduct, actions, and/or inactions have caused a

19   diminution of Plaintiffs' property values and other injuries; and

20   y.    Whether Plaintiffs are entitled to injunctive relief against the CITY.

21   52.    Superiority.  A class action is superior to any other available method for the fair

22   and efficient adjudication of the claims of Class members because Defendants have acted or

23   refused to act on grounds generally applicable to all Class members, thereby making appropriate

24   final injunctive relief on a class-wide basis.  In addition, Plaintiffs and Class members will not be

25   able to obtain effective and economical legal redress unless the action is maintained as a class

26   action.  Finally, without class certification, the prosecution of separate actions by individual

27   Class members would create the risk of:

28   a.    Inconsistent or varying adjudications with respect to individual Class

members, which would establish incompatible standards of conduct for Defendants;

   b.   Adjudications with respect to the individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests;

   c.   Defendants necessarily gaining an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each individual member of the Class with Defendants' vastly superior financial and legal resources; and

   d.   Unnecessary delay and expense to all parties and to the court system.

53.   Plaintiffs do not anticipate any difficulty in the management of this litigation.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### INVERSE CONDEMNATION
### (Against the CITY and DOES 1-100, Inclusive)

54.   Plaintiffs re-allege and incorporate herein by reference all of the allegations contained in paragraphs 1-4, 5a, 5c, 6-38, and 41-53, inclusive, as though fully set forth herein.

55.   Article I, Section 19 of the California Constitution provides that "[p]rivate property may be ... damaged for a public use and only when just compensation ... has first been paid to, or into court for, the owner." The fundamental policy underlying inverse condemnation is that the costs of a public improvement benefiting the community should be spread among those benefited rather than allocated to a single member of the community.

56.   The CITY and DOES 1-100 planned, constructed, operated, maintained, and/or oversaw the NESWTF for public use and benefit: to supply the CITY's residents with more water. The NESWTF supplements the CITY's drinking water with treated surface water received through the Enterprise Canal. In the peak summer months, the NEWSTF supplies about 15% of the City of Fresno's potable water. In the winter months when demand is lower, it supplies approximately 30% of the system demand.

57.   The CITY's introduction of treated surface water into Fresno's water supply as

deliberately designed and conceived by the CITY caused physical damage to Plaintiffs' and Class members' properties.

58.     The CITY had prior knowledge, based on the 1998 report that HDR Engineering, Inc. prepared for it, that galvanized piping predominates with well over 50% of the installation in Northeast Fresno households. The CITY also knew that properties with such piping would be susceptible to discoloration in their water and corrosion in their piping if supplied with water from the NESWTF. The CITY also knew this would likely lead to the leaching of metals, including metals such as iron and lead, into the water that Northeast Fresno residents drink or otherwise ingest or use.

59.     Despite the CITY's knowledge that homes with galvanized piping would be susceptible to accelerated corrosion due to the chemistry change of switching water sources, the CITY nevertheless made a deliberate policy decision to shift the risk of future loss to private property owners, including Plaintiffs and Class members; and these inherent risks forewarned by the 1998 report did in fact materialize. As a result of the CITY's decision to activate, operate, and maintain the NEWSTF as deliberately planned, constructed, and maintained, Plaintiffs and Class members have suffered legal injuries and damages, including but not limited to physical damage to their properties, the loss of and diminution of value of their properties, the loss of use and enjoyment of their property, ongoing and continued dissolution of the zinc coating in their galvanized piping, and the cost to repair the damages.

60.     Dr. Vernon Snoeyink, an expert hired by the CITY, identified in his September 16, 2016 evaluation report to the CITY that the probable cause of the discoloration in residents' water was the introduction by the CITY of the NESWTF treated surface water into a water system that for decades served solely groundwater. The report further concluded that the CITY's change in water sources caused a disturbance in the chemical balance between the water and the piping surfaces. This disturbance only intensified with the CITY's deliberate act of continuously switching the two chemically different water sources back and forth based on consumer demand, which prevented the surface piping from being able to establish a balance with either water sources.

61.     The CITY and DOES 1-100, and each of them, have damaged and taken the private property of Plaintiffs and the Class members, entitling Plaintiffs and the Class members to just compensation under Article I, Section 19 of the California Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution.

62.     Plaintiffs and the Class members have suffered a taking without just compensation in an amount that exceeds the jurisdictional minimum of this Court. The damages of the Plaintiffs and the Class members include, but are not limited to: substantial diminution in the value of property, reduced safety and marketability of property, costs to mitigate the damages, cost of relocation and temporary housing during the repairs, costs of experts and consultants to determine the scope and cost of repair, and attorneys' fees and costs incurred in pursuing this action.

63.     The CITY and DOES 1-100 are liable to Plaintiffs and Class members for all damages, costs, disbursements, expenses, including expert fees, and attorneys' fees, among other things, arising from their actions and/or inactions, pursuant to Cal. Code Civil Proc. §§ 1021.5 and 1036.

## SECOND CAUSE OF ACTION
### NEGLIGENCE
### (Against the CITY and DOES 1-100, Inclusive)

64.     Plaintiffs re-allege and incorporate herein by reference all of the allegations contained in paragraphs 1-4, 5b, 5c, 5d, and 6-53, as though fully set forth herein.

65.     California Government Code § 815.6, provides:
Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

66.     The CITY and DOES 1-100, inclusive, owe mandatory duties to Plaintiffs and Class members to comply with the United States Safe Drinking Water Act ("U.S. SDWA"), 42 U.S.C. § 300f *et seq.*, the California Safe Drinking Water Act ("Cal. SDWA"), Cal. Health & Saf. Code § 116270 *et seq.*, 22 C.C.R. § 64664, the Fed. LCRs, 40 C.F.R. § 141.80 *et seq.*, and the Cal. LCRs, 22 C.C.R. § 64670 *et seq.*

67. The U.S. SDWA, 42 U.S.C. § 300f *et seq.*, the Cal. SDWA, Cal. Health & Saf. Code § 116270 *et seq.*, 22 C.C.R. § 64664, the Fed. LCRs, 40 C.F.R. § 141.80 *et seq.*, and Cal. LCRs, 22 C.C.R. § 64670 *et seq.*, are designed to protect against the harms suffered by Plaintiffs and Class members, namely the provision of public water that is not pure, wholesome, potable, or safe for public consumption.

68. The EPA is responsible for establishing regulations pursuant to the U.S. SDWA, 42 U.S.C. § 300f *et seq.* Enforcement and implementation of those rules is delegated to state and local environmental agencies and municipalities.

69. The California State Legislature enacted the Cal. SDWA, Cal. Heath & Saf. Code § 116270 *et seq.*, to improve upon the minimum requirements of the U.S. SDWA, and to establish primary drinking water standards that are at least as stringent as those established under the U.S. SDWA.

70. The Fed. LCRs, 40 C.F.R. § 141.80 *et seq.*, and Cal. LCRs, 22 C.C.R. § 64670 *et. seq.* were enacted to establish protocols to ensure the public water systems do not allow unsafe levels of lead and copper to contaminate municipal water supplies.

71. The CITY violated mandatory duties imposed and required pursuant to the U.S. SDWA, 42 U.S.C. § 300f *et seq.*, the Cal. SDWA, Health & Saf. Code § 116270 *et seq.*, 22 C.C.R. § 64664, and supporting federal and state regulations.

72. The Fed. LCRs and the Cal. LCRs require the CITY's water utilities to test its water supply from the taps of consumers.

73. In order to comply with the Fed. LCRs and the Cal. LCRs, California enacted detailed laws and regulations governing the testing of its water supply. The manner and method of water supply testing is not discretionary.

74. The CITY failed to discharge its mandatory duty to conduct water supply testing.

75. The Fed. LCRs and the Cal. LCRs and California law require that the CITY report the results of all tap samples, including those samples that exceed the federal action level of more than 15 parts per billion ("ppb") of lead, to the State. These state and federal reporting requirements are not discretionary.

1    76.    The CITY failed to discharge its mandatory duty to report the results of lead

2    levels in excess of 15 ppb.

3    77.    The Fed. LCRs and Cal. LCRs require that the CITY complete a lead public

4    education program and to deliver to the State a copy of the materials sent pursuant to the

5    education program.  These requirements are not discretionary.

6    78.    The CITY failed to discharge its mandatory duties to complete a lead public

7    education program, and to deliver to the State a copy of the materials sent pursuant to the

8    education program.

9    79.    The Cal. LCRs require the CITY to keep records related to the Cal. LCRs for at

10   least 12 years.  This requirement is not discretionary.

11   80.    The CITY failed to discharge its mandatory duties to keep records for 12 years.

12   81.    The Cal. SDWA, at Cal. Health & Saf. Code § 116450, requires the CITY to file a

13   report with the State when any primacy drinking water standards—including those set forth in

14   the Fed. LCRs and Cal. LCRs —is not complied with, or when a monitoring requirement is not

15   performed.  This state reporting requirement is not discretionary.

16   82.    The CITY failed to discharge its mandatory duty to report its water supply's

17   noncompliance with drinking water standards.

18   83.    The CITY failed to discharge its mandatory duty to report that a monitoring

19   requirement, namely proper lead and copper testing pursuant to the Fed. LCRs and Cal. LCRs

20   was not performed.

21   84.    The Cal. SDWA at Cal. Health & Saf. Code § 116450, requires the CITY to

22   notify the public when any primacy drinking water standard—including the standards set forth in

23   the Fed. LCRs and Cal. LCRs —is not complied with, or when a monitoring requirement is not

24   performed. This public notification requirement is not discretionary.

25   85.    The CITY failed to discharge its mandatory duty to notify the public that a

26   monitoring requirement, namely proper lead and copper testing, was not performed.

27   86.    22 C.C.R. § 64664 requires the CITY to report all citizen water quality complaints

28   to the State on a monthly basis. This reporting requirement is not discretionary.

87. The CITY failed to discharge its mandatory duty to report all citizen water quality complaints to the State on a monthly basis.

88. The laws and regulations enacted pursuant to the U.S. SDWA, 42 U.S.C. § 300f *et seq.*, and the Cal. SDWA, Cal. Health & Saf. Code § 116270 *et seq.*, the Fed. LCRs, 40 C.F.R. § 141.80 *et seq.*, and the Cal. LCRs, 22 C.C.R. § 64670 *et seq.*, are intended to protect against the kind of injury suffered by Plaintiffs and Class members, namely the contamination of public drinking water with unsafe levels of toxic substances including but not limited to lead.

89. The breach by the CITY and DOES 1-100 of the mandatory duties described above was a substantial factor in causing injuries to Plaintiffs and the Class.

90. The CITY's decision to introduce surface water treated by the NESWTF into the water supply without taking known and necessary measures to protect the piping systems in Plaintiffs' and Class members' homes caused discolored water, accelerated corrosion in pipes delivering water, and eventually the contamination of the water with excessive levels and lead, iron, and other hazardous substances.

91. The CITY disregarded, for over a period of years, numerous citizen complaints regarding the Fresno water supply. The CITY negligently failed to investigate and/or remedy the problem and failed to follow legislatively mandated water testing, monitoring, and reporting requirements. CITY officials also failed to report the results of tests revealing contaminated and discolored water in the water supply to the State of California or take sufficient system-wide measures to remedy the problem in order to mitigate or prevent further damages to its residents and their properties, all of which has only served to prolong, intensify, and aggravate the degrading of Plaintiffs' galvanized piping and the exposure of Plaintiffs' and Class members' persons and properties to unsafe levels of lead, iron, and other hazardous substances in their drinking water. The harm Plaintiffs and Class members suffered, and continue to suffer, is a direct result of Defendants' actions and inactions.

92. The CITY has instead simply denied having knowledge of this widespread issue, contending that it only recently discovered the issue in January 2016.

93. Plaintiffs and Class members relied on the CITY to perform its duties and to

ensure that unsafe levels of lead, iron, copper, and/or other toxins did not contaminate its water supplies.

94.     The CITY breached its duties to Plaintiffs and members of the putative class in ways including, but not limited to, the following:

    a.      failing to require proper corrosion control treatment of water supplied by the CITY;

    b.      failing to implement proper corrosion control treatment of water supplied by the CITY;

    c.      failing to require proper testing of water supplied by the CITY;

    d.      failing to conduct proper testing of water supplied by the CITY;

    e.      failing to respond to evidence that water supplied from NESWTF was not safe for public consumption when supplied to homes with galvanized steel pipes;

    f.      failing to conduct a reasonable investigation after receiving evidence that the drinking water was not safe for public consumption;

    g.      failing to promptly report evidence of lead and other hazardous substances in the water supply to the State of California, Plaintiffs, and members of the putative class;

    h.      failing to promptly notify Plaintiffs and members of the putative class to the presence of lead in their water;

    i.      withholding and concealing information showing that the water was unsafe to drink;

    j.      failing to warn Plaintiffs and the public that the water supplied from the NESWTF to Plaintiffs' properties, particularly properties with galvanized steel pipes, was not safe to drink;

    k.      Publically declaring contaminated unsafe water to be safe, clean, and reliable to drink; and

    l.      Failing to take steps to mitigate the impact of the corrosive nature of the NESWTF on Plaintiffs' and Class members' pipes.

1    95.    Plaintiffs' and Class members' properties suffered foreseeable harm as a result of

2  the CITY's breach of its mandatory duties and as a result of its negligent implementation and

3  operation of the NESWTF.

4    96.    The CITY knew, or should have known that its failure to abide by their duties to

5  test, report, investigate, and remediate problems with the water supply, and notify the public of

6  same, could result in corrosion of pipes and excessive levels of lead, iron, and other hazardous

7  substances to leach into residents' water. The CITY knew or should have known that the failures

8  of the foregoing could, and would cause physical damage to Plaintiffs' and Class members'

9  properties.

10    97.    As a result of CITY's breach of its mandatory duty to test, report and investigate

11  problems with the water supply and notify the public of same, Plaintiffs' and Class members'

12  properties were, and are, being physically invaded by corrosive water supplied by the CITY.

13    98.    As a result of the CITY's breach of its mandatory duties, Plaintiffs and Class

14  members suffered property damages as alleged herein, including physical injury to their

15  property, as corroborated by testing of their water revealing the presence of lead in excess of

16  allowable levels.

17    99.    As a result of the CITY's breach of its mandatory duties, Plaintiffs and Class

18  members suffered and will continue to suffer the loss of the quiet use and enjoyment of their

19  properties.

20    100.    As a result of the CITY's breach of its mandatory duties, Plaintiffs and Class

21  members have suffered legal injury and damages, in an amount to be proven at trial, including,

22  but not limited to, property damage, diminution of value of real estate, the cost to repair the

23  damage, plus the value of their lost use of the property as a result of the CITY's negligence.

24    101.    Pursuant to California Government Code § 815.6, the CITY liable to Plaintiffs

25  and Class members for all damages arising from the breach of their mandatory duties, including

26  compensatory and injunctive relief, and attorneys' fees pursuant to Cal. Code Civ. Proc. §

27  1021.5.

28  ///

# THIRD CAUSE OF ACTION
## PRIVATE NUISANCE
### (Against All Defendants)

102.    Plaintiffs re-allege and incorporate herein by reference all of the allegations contained in paragraphs 1-53, 55-63, 65-101, and 133-146, inclusive, as though fully set forth herein.

103.    Plaintiffs and Class members own or lease property in Fresno, California.

104.    The CITY owes a mandatory duty to Plaintiffs and Class members to comply with the U.S. SDWA, 42 U.S.C. § 300f *et seq.*, the Cal. SDWA, Cal. Health & Saf. Code § 116270 *et seq.*, 22 C.C.R. § 64664, the Fed. LCRs, 40 C.F.R. § 141.80 *et seq.*, and Cal. LCRs, 22 C.C.R. § 64670 *et seq.*

105.    The U.S. SDWA, 42 U.S.C. § 300f *et seq.*, the Cal. SDWA, Cal. Health & Saf. Code § 116270 *et seq.*, 22 C.C.R. § 64664, the Fed. LCRs, 40 C.F.R. § 141.80 *et seq.*, and the Cal. LCRs, 22 C.C.R. § 64670 *et seq.* are designed to protect against the harms suffered by Plaintiffs and Class members, namely the provision of public water that is not pure, wholesome, potable, or safe for public consumption.

106.    Defendants' actions, and the CITY's breach of its duties described above, created a nuisance and substantially and unreasonably interfered with Plaintiffs' and Class members' comfortable enjoyment of life and property, by causing known, corrosive NESWTF water to be delivered to Plaintiffs' and Class members' homes, resulting in foul, discolored, and lead-contaminated water, which harmed their properties and persons.

107.    Neither Plaintiffs nor Class members consented to the invasion of corrosive water that would cause the piping in their home to degrade, resulting in foul, discolored, and lead-contaminated water in their persons or properties.

108.    The contamination of Class members' drinking water has interfered with the rights of Plaintiffs and Class members to use and enjoy their property. Indeed, this interference is substantial in nature. It has caused and is causing Plaintiffs and Class members to, *inter alia*, refrain from using water to drink, cook, or bathe, which has, in turn, caused significant inconvenience and expense. Defendants' conduct has also substantially interfered with

1 Plaintiffs' and Class members' ability to enjoy their respective properties, to avail themselves of

2 their respective properties' value as an asset and/or source of collateral for financing, and to use

3 their respective properties in the manner that each Plaintiffs or Class member so chooses.

4      109.   Defendants' negligent, reckless and/or intentional acts and omissions, and the

5 CITY's breach of its duties, were unreasonable and constitute a continuous invasion of the

6 property rights of Plaintiffs and Class members.

7      110.   As a result of Defendants' acts and/or failures to act, and the CITY's breach of its

8 mandatory duties, Plaintiffs and the putative class have incurred, and will continue to incur, costs

9 and expenses related to the investigation, treatment, remediation, and monitoring of drinking

10 water and the contamination of their respective properties.

11 **FOURTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
12 **(Against the CITY and DOES 1-100, Inclusive)**

13      111.   Plaintiffs re-allege and incorporate herein by reference all of the allegations

14 contained in paragraphs 1 to 53, 55-63, and 65-101, inclusive, as though fully set forth herein.

15      112.   At all times herein, the CITY, pursuant to Chapter 6, Article 1 of the Municipal

16 Code of the CITY, offered services to provide for payment potable, clean, safe, and reliable

17 water that meets all federal and state drinking water standards to their residents.

18      113.   Plaintiffs accepted the offer by applying to the CITY for water service, utilizing

19 the CITY's water, agreeing to pay for the water, and tendering payment for the water.

20      114.   To receive water services, Plaintiffs and Class members were required to, and did,

21 apply for an account, either through the written application process on the CITY's website or

22 through telephone. The application contains terms, including the location of the premises to be

23 served, the person(s) authorized on the water service account, and the date water service is to

24 commence. The CITY also has conditions precedent to final acceptance of Plaintiffs' and Class

25 members' water service applications, as listed in Chapter 6, Article 1 of the CITY's municipal

26 code. Plaintiffs and Class members were provided with a monthly bill detailing the amount

27 owed to the CITY, to which they paid and the CITY collected. Plaintiffs and Class members

28 may also discontinue their water service upon request, to which the CITY will complete within

29

1    forty-eight hours of the request.

2       115.   Thus, Plaintiffs, Class members, and the CITY entered into a contract for the

3    purchase and sale of potable, clean, safe, and reliable, non-corrosive, and nonharmful water that

4    meets all federal and state drinking water standards.

5       116.   The CITY has admitted that the water provided to Plaintiffs and Class members

6    was substandard and degraded, and therefore not fit for its intended uses in Plaintiffs' and Class

7    members' homes.

8       117.   The CITY materially and irreparably breached the contract with Plaintiffs and

9    Class members by failing to provide non-corrosive, non-harmful, potable, clean, and safe water,

10    and instead provided substandard and degraded water unfit for use in Plaintiffs and Class

11    members' homes.

12       118.   As a result of the CITY's breach, Plaintiffs and Class members suffered damages

13    in the amount of all debts and obligations for the water supplied by the CITY, whether tendered

14    or untendered, and as stated throughout this Complaint.

15       119.   The CITY is liable to Plaintiffs and the putative class for all amounts billed and/or

16    collected, whether paid or unpaid, for corrosive water that was supplied to Plaintiffs and Class

17    members.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Against the CITY and DOES 1-100, Inclusive)**

18

19

20       120.   Plaintiffs re-allege and incorporate herein by reference all of the allegations

contained in paragraphs 1 to 53, 55-63, and 65-101, inclusive, as though fully set forth herein.

21

22       121.   The CITY has received the benefits of the funds paid by Plaintiffs and Class

members for substandard and degraded water that was, and is, unfit for use in Plaintiffs' homes.

23

24       122.   The CITY has utilized these funds for the operation of the government(s) of

Fresno, California.

25

26       123.   The retention of the benefit of the funds paid by Plaintiffs and Class members

constitutes unjust enrichment in the amount of all funds paid for water that was unfit for human

27

consumption.

28

124. It would be unjust to allow the CITY to retain the benefit they obtained from Plaintiffs and the Class members.

125. Plaintiffs seek restitution and restitutionary disgorgement of the CITY's funds.

**SIXTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**(Against the CITY and DOES 1-100, Inclusive)**

126. Plaintiffs re-allege and incorporate herein by reference all of the allegations contained in paragraphs 1 to 53, 55-63, and 65-101, inclusive, as though fully set forth herein.

127. The CITY directly promised to provide to Plaintiffs and Class members water that was potable, clean, safe, reliable, and fit for use in their homes and/or impliedly promised that the water provided to Plaintiffs and Class members was noncorrosive and non-harmful when supplied to their homes.

128. The CITY has admitted that the water provided to Plaintiffs and Class members was substandard and degraded and therefore clearly not fit for its intended uses.

129. The provision of water unfit for its intended purpose and/or the admission that the water was not fit for its intended purpose constitute material breaches of an implied warranty and/or contract.

130. As a result of the CITY's breach, Plaintiffs and Class members suffered damages in the amount of all debts and obligations for water, whether tendered or untendered, and as stated throughout this complaint.

131. The CITY is liable to Plaintiffs and the putative class for all amounts billed and/or collected, whether paid or unpaid, for water that was unfit for human consumption.

**SEVENTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against WATER METER INSTALLERS and DOES 1-100, Inclusive)**

132. Plaintiffs re-allege and incorporate herein by reference all of the allegations contained in the paragraphs 1-53, inclusive, as though fully set forth herein.

133. In 2003, California passed legislation requiring all water suppliers in the federal Central Valley Project under a water service contract or subcontract with the U.S. Bureau of Reclamation, including Fresno, to have water meters installed by January 2013 and bill by a

volumetric rate.  As a result, the CITY undertook a "multi-year installation project" in or about 2008 to install water meters and connect residential pipes to them, finishing this project in or about the last month of 2012. The CITY retained private contractors, including the WATER METER INSTALLERS to undertake the installation of water meters in order to bring Fresno into compliance. The WATER METER INSTALLERS, retained by the CITY, negligently installed these water meters, by, among other things, failing to install industry-standard dielectric connections between the brass meters and the galvanized piping.

134. As a result of the Defendants' failure to adhere to industry standards for the installation and connection of water meters, and specifically by joining dissimilar metals without taking the appropriate measures to prevent and protect against accelerated corrosion, the pipes supplying residents' water, including Plaintiffs' water from the CITY corroded at an accelerated rate, thereby exposing residents, including Plaintiffs, to toxic levels of lead and other hazardous substances.

135. Indeed, it was not until approximately July 2016 that news reporters investigating the CITY's water issues reported that the Defendants' installation of water meters in or about 2012 may have caused corrosion as a result of Defendants having attached dissimilar metals.  In or about the same time, the CITY mailed out notices to certain residents describing the negligent installation of water meters as follows: "In these locations where copper, brass and similar metals are connected to galvanized pipe- or the dielectric union has failed- corrosion of the galvanized piping will occur- regardless of the water supply or corrosion control strategy- and lead will be found present during sampling."

136. WATER METER INSTALLERS and DOES 1-100 undertook to perform a duty owed to Plaintiffs and Class members by the City of Fresno and/or the State of California.

137. Based on this undertaking, WATER METER INSTALLERS and DOES 100 have a duty to Plaintiffs and the putative class to exercise reasonable care in the performance of their services.

138. WATER METER INSTALLERS and DOES 1-100 have a duty to adhere to industry standards in performing services.

CLASS ACTION COMPLAINT

139. WATER METER INSTALLERS and DOES 1-100 failed to exercise reasonable care or adhere to industry standards in the installation of water meters in the City of Fresno.

140. WATER METER INSTALLERS and DOES 1-100 failed to exercise reasonable care or adhere to industry standards by failing to install industry-standard dielectric connections between the brass meters and the galvanized piping.

141. WATER METER INSTALLERS and DOES 1-100 failed to exercise reasonable care or adhere to industry standards by joining dissimilar metals without taking the appropriate measures to prevent and protect against accelerated corrosion.

142. As set forth above, the installation by WATER METER INSTALLERS and DOES 1-100 of connections between Plaintiffs' and Class members' homes and the public water supply caused the pipes connecting the CITY's water supply to Plaintiffs and Class members' properties to corrode and leach lead and other toxic metals into their drinking water.

143. WATER METER INSTALLERS and DOES 1-100 knew or should have known that the negligent installation of water meters could result in corroded piping and ultimately cause Plaintiffs and Class members to be exposed to contaminated water.

144. As a result of WATER METER INSTALLERS and DOES 1-100's negligent conduct, including those acts described above, Plaintiffs and Class members suffered harm to their properties.

145. WATER METER INSTALLERS and DOES 1-100's negligent conduct was a substantial factor in causing Plaintiffs' and Class members' harm.

146. WATER METER INSTALLERS are liable to Plaintiffs and Class members for all damages arising from their negligence, including compensatory relief, and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants, and each of them, as follows:

1. For an order certifying the Class and appointing Plaintiffs as representatives of the Class and appointing the undersigned as Class Counsel;

1       2.     For an award of actual damages as against Defendants;

2       3.     For an award of restitution and restitutionary disgorgement as against the CITY;

3       4.     For an award of attorneys' fees and costs under Code of Civil Procedure section

4   1021.5 and as otherwise allowed by law;

5       5.     For an award of reasonable costs, disbursements, and expenses, including

6   attorneys' fees, pursuant to Code of Civil Procedure section 1036 and as otherwise allowed by

7   law;

8       6.     For an injunction prohibiting the CITY from continuing the wrongful conduct

9   alleged herein;

10      7.     For pre-judgment and post-judgment interest to the extent allowed by law; and

11      8.     For such other and further relief as the Court deems just and proper.

12

13   ///

14   ///

15   DATED: May 16, 2017        KABATECK BROWN KELLNER LLP

16

17                  By: _____

18                      Brian S. Kabateck
                           Christopher B. Noyes

19                      Joana Fang

20            COTCHETT, PITRE & McCARTHY, LLP

21

22                  By: _____

23                      Frank M. Pitre
                      Julie L. Fieber

24                      John P. Thyken

25            VAN BLOIS & ASSOCIATES

26

27                  By: _____
                      Michael E. Gatto

28            *Attorneys for Plaintiffs*

# REQUEST FOR JURY TRIAL

Plaintiffs, individually and on behalf of a Class of other similarly situated, hereby respectfully request a trial by jury of all causes of action and issues so triable.

DATED: May 16, 2017

KABATECK BROWN KELLNER LLP

By: _____
Brian S. Kabateck
Christopher B. Noyes
Joana Fang

COTCHETT, PITRE & McCARTHY, LLP

By: _____
Frank M. Pitre
Julie L. Fieber
John P. Thyken

VAN BLOIS & ASSOCIATES

By: _____
Michael E. Gatto

*Attorneys for Plaintiff*

1